EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ariel Hernández Villanueva; Arminda Pérez Hernández y la Sociedad Legal de Gananciales compuesta entre ambos<br>        Recurridos<br><br>        v.<br><br>Miguel Hernández y la Sociedad Legal de Bienes Gananciales compuesta por él y la señora Gladys Villanueva Soltrén; M.M. Enterprise; Gómez & Santurio<br>        Demandados<br><br>I.P.C. Division of Comstar International, Inc.<br>        Peticionaria | Certiorari<br><br>2000 TSPR 14 |

Número del Caso: CC-1998-0676

Fecha: 27/01/2000

Tribunal de Circuito de Apelaciones: Circuito Regional IV

Juez Ponente: Hon. Angel F. Rossy García

Abogados de Comstar Inter., Inc.: Bufete Benjamín Acosta, Jr.
                                  Lcdo. Nelson R. Garayva Vázquez

Abogados de Ariel Hernández Villanueva: Lcdo. Ulpiano Falcón Matos
                                        Lcdo. Carlos Hernández Pérez

Abogado de Gómez & Santurio:  Lcdo. Pedro Toledo González

Abogados de Miguel Hernández: Lcda. Cristina A. Yúñez Méndez

Materia: Daños y Perjuicios

    Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| ARIEL HERNÁNDEZ VILLANUEVA; | * | |
| ARMINDA PÉREZ HERNÁNDEZ y la | * | |
| Sociedad Legal de Gananciales | * | |
| compuesta entre ambos | * | |
| | * | |
| Demandantes- Recurridos | * | |
| | * | |
| v. | * | CC-1998-676 |
| | * | |
| MIGUEL HERNÁNDEZ, y la Sociedad | * | Certiorari |
| Legal de Bienes Gananciales | * | |
| compuesta por él y la señora | * | |
| GLADYS VILLANUEVA SOLTREN; M.M. | * | |
| ENTERPRISE; GÓMEZ & SANTURIO | * | |
| | * | |
| Demandados | * | |
| | * | |
| v. | * | |
| | * | |
| I.P.C. DIVISION OF COMSTAR | * | |
| INTERNATIONAL, INC. | * | |
| | * | |
| Demandada-Peticionaria | * | |

*************************************

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RIO

San Juan, Puerto Rico, a 27 de enero de 2000.

La demandada-peticionaria, Comstar International, Inc. (en adelante "Comstar") recurre ante nos mediante auxilio de jurisdicción y *certiorari* solicitando que revisemos una sentencia dictada por el Tribunal de Circuito de Apelaciones el 30 de junio de 1998. Mediante dicha sentencia se revocó la sentencia sumaria parcial emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, en la cual se desestimó la demanda en cuanto a lo reclamado contra Comstar.

Por entender que el foro apelativo no incidió al revocar al tribunal de instancia confirmamos la sentencia recurrida.

I

El 1ro. de abril de 1994 el Sr. Ariel Hernández Villanueva (en adelante "el demandante") adquirió una botella de un producto químico formulado para destapar cañerías y drenajes de la marca *Hot Power Drain Cleaner* (en adelante "*Hot Power*"). Este producto fue comprado en un

pequeño negocio de ventas al detalle con el propósito de destapar el drenaje de la bañera del hogar del demandante.

El demandante, antes de utilizar el *Hot Power*, se aprestó a leer las advertencias, precauciones e instrucciones provistas por el manufacturero –la codemandada Comstar– para el uso de dicho producto, las cuales se encontraban impresas en la botella plástica y en un volante separado colocado alrededor del mango de la botella. Siguiendo las instrucciones leídas, el demandante secó el exceso de agua del interior del drenaje, proveyó ventilación adecuada al área donde iba a utilizar el producto, se proveyó de gafas y guantes, vertió en el drenaje el producto y colocó una cacerola invertida para cubrir la abertura del drenaje, ello para evitar que el *Hot Power* salpicara y causara algún daño. Acto seguido, abandonó el baño por un período de quince (15) minutos, tiempo en que el producto en cuestión debía producir el resultado esperado.

Transcurrido dicho tiempo, el demandante regresó al cuarto de baño y se dispuso a irrigar el drenaje con agua fresca –según indicado en las instrucciones– para lo cual removió la cacerola invertida que había colocado previamente sobre el drenaje y se colocó en cuclillas dentro de la bañera. Segundos luego de que el agua comenzara a fluir, se produjo una explosión que ocasionó que el *Hot Power* fuera expulsado de la tubería y quemara la ropa del demandante y su piel. Esto le produjo severas quemaduras de tercer grado en sus piernas y parte de su pecho que requirieron hospitalización inmediata para su tratamiento.

A raíz de dicho accidente, el 30 de marzo de 1995, el demandante y su esposa Arminda Pérez Hernández y la sociedad legal de gananciales por ellos constituida (en adelante "los demandantes"), presentaron una demanda en daños y perjuicios en contra del Sr. Miguel Hernández, dueño del negocio en el cual el demandante adquirió el *Hot Power*, y contra *Comstar,* fabricante de dicho producto. Luego presentaron demanda enmendada para incluir como codemandados a Gómez & Santurio, empresa distribuidora del producto en Puerto Rico.

Los demandantes alegaron que los daños sufridos por ellos le eran imputables a los referidos codemandados por haber sido negligentes en manufacturar, distribuir, vender y poner en circulación un producto altamente peligroso, sabiendo, o debiendo haber sabido que el mismo podía ocasionar graves daños. Fundamentaron su reclamo en la doctrina de responsabilidad absoluta por productos y las doctrinas de garantía expresa o implícita de los fabricantes, distribuidores y vendedores.

Comstar presentó su contestación a la demanda negando todas las alegaciones pertinentes en ella aducidas, excepto el hecho de que es la compañía fabricante del producto. Invocó como defensas afirmativas que el producto fue fabricado para ser utilizado únicamente por profesionales y para personal entrenado para destapar cañerías; que no está a la venta en Puerto Rico para uso particular ya que ha sido diseñado exclusivamente para uso industrial; que el producto no estaba defectuoso y; que las advertencias contenidas en el producto están ocupadas (preempted) por la Ley Federal de Sustancias Peligrosas, 15 U.S.C.A. secs. 1261 *et seq.* (en adelante "FHSA", por sus siglas en inglés), por lo cual una reclamación en daños y perjuicios estaba desplazada por dicho estatuto.

Una vez trabada la controversia las partes dieron curso a un extenso descubrimiento de prueba. Del mismo surge que el *Hot Power* es fabricado y envasado por Comstar, una corporación debidamente organizada bajo las leyes de Nueva York (con oficinas en College Point, Nueva York) en botellas plásticas de un cuartillo, las cuales se empacan en cajas que contienen doce botellas –las que, a su vez, vienen empacadas y selladas individualmente en bolsas plásticas– y son así mercadeadas en Puerto Rico a su representante exclusivo Gómez & Santurio. Este las distribuye a sus clientes, entre los cuales se encuentran pequeños comerciantes que detallan el producto a sus parroquianos, no obstante indicarse en una hoja que acompaña las cajas de doce botellas que el producto no está formulado para utilizarse en

el hogar (Not for Household Use), aun cuando dicha advertencia no aparece en la rotulación de la botella en sí.

Luego de varios incidentes procesales, el 8 de diciembre de 1997, Comstar presentó "Moción de Sentencia Sumaria" alegando que la causa de acción de los demandantes fundada en la insuficiencia de las advertencias del producto, estaba desplazada por el FHSA, por lo que el tribunal de instancia estaba impedido de establecer un requisito diferente sobre las advertencias en lo que a productos peligrosos concierne, así como por la reglamentación impuesta por el Consumer Product Safety Commission, 16 C.F.R. secs. 1500 *et seq.*

Los demandantes replicaron negando que en la rotulación y etiqueta del *Hot Power* producida por Comstar se observaran las disposiciones de los referidos estatutos y reglamentos, por lo cual alegaron que las disposiciones de ley, reglas o reglamentos existen para que se les de cumplimiento. Acompañaron con su escrito el informe pericial suscrito por el Sr. Alan B. Weckerling (en adelante "el perito"), en el cual se concluye que las instrucciones sobre el uso adecuado del producto en cuestión no solamente inducían a error al usuario, sino que contenían información equivocada respecto al manejo del producto.

El 21 de enero de 1998, el tribunal de instancia declaró "no ha lugar" la moción de sentencia sumaria solicitada por Comstar. Oportunamente, Comstar presentó reconsideración.

La moción de reconsideración fue atendida por el tribunal de instancia, que la declaró "con lugar", dejando sin efecto la determinación anterior y desestimando la demanda en contra de Comstar. El foro a *quo*, sin entrar a discutir el planteamiento de que la FHSA desplazaba la acción de los demandantes, juzgó sumariamente que el *Hot Power* cumplía con los requisitos del reglamento federal y de la FHSA, fundamentándose en que el producto contenía entre sus advertencias la palabra POISON (VENENO) –según requerido por ley- y que las demás advertencias serían adicionales como medidas de protección pero que no

eran indispensables. Estimó que las referidas advertencias adicionales, no fueron controvertidas por la parte opositora.

Ante la desestimación de la demanda en contra de Comstar, los demandantes apelaron la sentencia sumaria parcial alegando que el tribunal de instancia erró al resolver por la vía sumaria los asuntos en controversia entre éstos y Comstar. El Tribunal de Circuito de Apelaciones, mediante sentencia de 30 de junio de 1998, revocó la sentencia del tribunal de instancia y determinó que el *Hot Power* caía dentro del ámbito de la FHSA, y que esta legislación contiene una disposición que desplaza limitadamente cualquier requisito estatal o local a ser incluido en la etiqueta o en la rotulación de tales productos que fuera diferente a aquéllos exigidos por la ley federal. No obstante, concluyó que, aunque es cierto que la FHSA tiene la intención de desplazar la causa de acción estatal predicada en la insuficiencia de las advertencias de rotulación o etiqueta de un producto peligroso, la misma puede ser considerada por el foro de instancia bajo el fundamento de haberse incumplido con las exigencias del referido estatuto. Concluyó además, que las determinaciones realizadas por instancia en cuanto a las advertencias en el producto no eran susceptibles de resolución por la vía sumaria. Con estos fundamentos revocó la sentencia sumaria parcial y devolvió el caso al foro de instancia para la continuación de los procedimientos.

Inconforme, Comstar recurrió ante nos mediante *certiorari* y "Moción Solicitando Remedio en Auxilio de Jurisdicción", aduciendo la comisión de los siguientes errores:

> 1. Erró el Honorable Tribunal de Circuito de Apelaciones al concluir que la causa de acción de los demandantes-recurridos apoyada en la insuficiencia de las advertencias e instrucciones del producto *Hot Power*, no está desplazada (preempted) por la Ley Federal de Substancias Peligrosas, 15 U.S.C. §1261, *et seq.* y las reglamentaciones promulgadas por el Consumer Product Safety Commission, 16 C.F.R. § 1500, *et seq.*
> 2. Erró el Honorable Tribunal de Circuito de Apelaciones al concluir que un tribunal puede considerar el alegado incumplimiento de un producto con las disposiciones contenidas en la Ley Federal de Substancias Peligrosas, 15 U.S.C. §1261, *et seq.*

3. En la alternativa, erró el Honorable Tribunal de Circuito de Apelaciones al no determinar, como cuestión de derecho que el producto Hot Power cumple con las disposiciones de la Ley Federal de Substancias Peligrosas, 15 U.S.C. § 1261, *et seq.* y con las reglamentaciones promulgadas por el Consumer Product Safety Commission, 16 C.F.R. § 1500, *et seq.*

4. Erró el Honorable Tribunal de Circuito de Apelaciones al concluir que la causa de acción de los demandantes-recurridos apoyada en que Hot Power es un producto "inherentemente peligroso" debe ser dilucidado en un juicio plenario.

El 7 de agosto de 1998 emitimos Resolución expidiendo mandamiento de *certiorari* dirigido al Tribunal de Circuito de Apelaciones, Circuito Regional IV, ordenando que se remitieran a este Tribunal los autos del presente caso para revisar la sentencia recurrida.

Examinadas las comparecencias de las partes así como los autos del presente caso, estamos en posición de resolver.

II

La doctrina del desplazamiento u ocupación del campo –la resolución de conflictos entre leyes federales y estatales– proviene de la Cláusula de Supremacía de la Constitución de los Estados Unidos. Art. VI, Cl. 2 de la Const. de EE.UU. Dispone que la ley federal tendrá supremacía sobre las leyes estatales cuando la primera no pueda coexistir con un estatuto estatal. *Cotto Morales* v. *Calo Ríos*, res. el 17 de abril de 1996, 140 D.P.R. __ (1996), 96 J.T.S. 56.

La ocupación del campo puede ocurrir si el Congreso expresamente lo dispone al aprobar una ley, o si al reglamentar un área específica, lo hace de forma tan abarcadora que no cabe duda que la intención federal es reglamentar la totalidad del área y no es posible ninguna otra reglamentación estatal. *Cotto Morales, supra.* Este principio constitucional ha sido desarrollado para evitar la reglamentación conflictiva de la conducta de varios organismos oficiales que puedan tener alguna facultad sobre una materia específica. *Rivera* v. *Security Nat. Life Ins. Co.,* 106 D.P.R. 517 (1977).

En *Cotto Morales, supra,* reiteramos el principio que establecimos en *Bordas Co.* v. *Secretario de Agricultura*, 87 D.P.R. 534, 552 (1963), de que "[n]o se presumirá que la reglamentación federal sustituye a la reglamentación estatal por el hecho de que el Congreso reglamente un área de forma limitada. Para que así sea, es necesario que la ley del Congreso interpretada razonablemente esté en conflicto real con la ley del estado. En ausencia de una prohibición específica en la ley federal contra una ley local, la legislación insular que complementa la ley federal es válida siempre y cuando que la primera no esté sustancialmente en conflicto con la segunda (citas omitidas)."

En el caso específico de la FHSA, ésta fue aprobada por el Congreso de Estados Unidos en 1960, y versa sobre el tráfico y el comercio de sustancias peligrosas. El propósito de esta legislación es reglamentar la distribución y la venta de las sustancias peligrosas o de los productos que contengan dichas sustancias en el comercio interestatal. Incluye los productos que son fabricados o envasados con el propósito o intención de que resulte propio, adecuado o conveniente su uso doméstico o casero, o que son diseñados para ser utilizados por niños.[1] Así surge del historial legislativo de dicha ley, el cual establece requisitos uniformes para toda la nación:

> ...nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use. 1960 U.S.C.C.A.N. 2833.

Al aprobarse esta ley, la misma no contenía disposición alguna sobre desplazamiento u ocupación del campo. No obstante, cuando la ley se enmendó en 1966 y luego en 1976, se estableció un desplazamiento limitado. Dispone:

---

[1] Aunque la FHSA cubre productos o substancias peligrosas de uso doméstico, ésta reglamenta cualquier producto o substancia que al fabricante le resulte razonablemente previsible que va a estar disponible para uso doméstico, aunque esa no sea la intención pretendida por éste. 16 C.F.R. sec. 15000.3(c)(10)(i). Véase: *Canty v. Ever-Last Supply Co.,* 685 A. 2d 1365 (1996).

> [I]f a hazardous substance or its packaging is subject to a cautionary labeling requirement under section 2(p) or 3(b) [15 U.S.C. §§1261(p) or 1262 (p)] designed to prevent against a risk of illness or injury associated with the substance, no State...may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such cautionary labeling requirement is identical to the labeling requirement under 2(p) or 3(b). 15 U.S.C.A. sec. 1261 note (b)(1)(A). Pub.L. 94-284, §17(a), May 11, 1976, 90 Stat. 510.

De este lenguaje surge claramente la intención del Congreso de desplazar limitadamente las leyes estatales cuando existen requisitos federales sobre las etiquetas y un estado impone requisitos distintos que buscan advertir sobre el mismo peligro. *Chemical Specialties MFRS. ASS'N, Inc.* v. *Allenby*, 744 F. Supp. 934, 937, footnote 4 (N.D.Cal. 1990). Resta determinar si este lenguaje es suficiente para desplazar una acción estatal en daños y perjuicios por no cumplir con los requisitos federales impuestos.

Esta controversia es una novel en nuestra jurisdicción por lo cual tenemos que analizar las disposiciones de la FHSA y recurrir a los principios ilustrativos que se puedan hallar en la jurisprudencia federal interpretativa de este estatuto. Veamos.

III

Como expresáramos, la FHSA reglamenta los productos que contienen sustancias peligrosas, así como las advertencias que deben contener en sus etiquetas. Según esta legislación, una etiqueta se define como:

> (n)...a display of written, printed, or graphic matter upon the immediate container of any substance or, in the case of an article which is unpackaged or is not packaged in an immediate container intended or suitable for delivery to the ultimate consumer, a display of such matter directly upon the article involved or upon a tag or other suitable material affixed thereto; and a requirement made by or under authority of this chapter that any word, statement, or other information appear on the label shall not be considered to be complied with unless such word, statement, or other information also appears (1) on the outside container or wrapper, if any there be, unless it is easily legible through the outside container or wrapper and (2) on all accompanying literature where there are directions for use, written or otherwise. 15 U.S.C.A. sec. 1261(n).

Es decir, que no se entenderá que una etiqueta cumple con esta legislación, a menos que la información requerida aparezca en la envoltura exterior, o que sea legible a través de ésta, y que también se incluya en la información que se acompañe al producto donde se indican las instrucciones para su uso.

Por otro lado una sustancia peligrosa se define como:

> (1)(A) Any substance or mixture of substances which is (i) toxic, (ii) is corrosive, (iii) is an irritant, (iv) is a strong sensitizer, (v) is flammable or combustible, or (vi) generates pressure through decomposition, heat, or other means if such substances or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use, including reasonable foreseeable ingestion by children. 15 U.S.C.A. sec. 1261 (f)(1)(A).

De igual forma, una "sustancia adecuada o conveniente para uso doméstico" es "any substance which is customarily produced or distributed for sale for consumption or use, or customarily stored, by individuals in or about the household and which is a hazardous substance as that term is defined in section 1261(f) of this title". 15 U.S.C.A. sec. 1471(2)(A).

Así, las sustancias que reglamenta esta legislación son aquéllas que son tóxicas, corrosivas o irritantes, entre otras, que puedan ocasionar lesiones personales sustanciales como resultado de su uso acostumbrado o razonablemente previsible y que puedan utilizarse en el hogar, aunque esa no sea la intención del fabricante.[2]

Por otra parte la FHSA establece que los productos que contengan estas sustancias peligrosas estarán sujetos a dicha legislación y los productos que violen sus disposiciones serán catalogados como una sustancia erróneamente rotulada. A estos efectos la ley dispone que se considerará erróneamente rotulada una sustancia peligrosa que omita:

1)Indicar en forma conspicua en la etiqueta:

---

[2] 16 C.F.R. sec. 15000.3(c)(10)(i). *Véase*: Nota 1, *Ante*.

(A)    El nombre y dirección del negocio del fabricante, envasador, distribuidor o vendedor;

(B)    El nombre corriente o el nombre químico, si no tuviere nombre corriente, de la sustancia peligrosa, o el de cada uno de los componentes que contri-buyan a su condición de peligrosa, a menos que el Comisionado, mediante re-glamento, permita o requiera el uso de un nombre genérico recono-cido;

(C)    La palabra "DANGER" en sustancias que son suma-mente inflamables, corro-sivas o sumamente tóxicas;

(D)    La palabra "WARNING" o "CAUTION" en todas las otras sustancias peligro-sas;

(E)    Advertencias sobre el peligro o los peligros principales como por ejem-plo: "Flammable", "Combus-tible", "Vapor Harmful", "Causes Burns", "Absorbed Through Skin", o frases similares que describan el peligro;

(F)    Medidas de precaución informando la acción a seguirse o evitarse excep-to cuando por reglamento sean modificadas por el Comisionado;

(G)    Instrucciones, cuando sea apropiado y necesario, para tratamiento de prime-ros auxilios;

(H)    La palabra "POISON" en cualquier sustancia peli-grosa que sea definida como altamente tóxica por la subsección (H) de esta sección;

(I)    Instrucciones para manejar o almacenar envases que requieran cuidado especial en dicho manejo o almace-namiento;

(J)    La advertencia "Keep out of the reach of children" o una frase equivalente; (Traducción nuestra).

Cualquier advertencia requerida en el subpárrafo (1) debe estar escrita en inglés, de forma conspicua y legible, y que contraste por su tipografía, diseño o color con el resto del material impreso en la etiqueta. 15 U.S.C.A. sec. 1261(p)(1) y (2). (Traducción nuestra.)

Es decir, que una sustancia peligrosa se considerará erróneamente rotulada si no contiene los requisitos arriba indicados.

De conformidad con este estatuto, el reglamento federal exige que las sustancias peligrosas contengan ciertas advertencias en sus etiquetas, conocidas como "signal words" y además reitera el hecho de que deben contener advertencias sobre los peligros asociados a éstas, así como las medidas de precaución que deben tomarse, para que no sean

consideradas como "erróneamente rotuladas". 16 C.F.R. sec. 1500.121(a)(1).

Es sobre estos requisitos que el Congreso tuvo la intención de desplazar la acción estatal. No obstante, tenemos que determinar, como señaláramos anteriormente, si esa intención congresional desplaza también una acción estatal en daños y perjuicios por no cumplir con los requisitos federales impuestos.

IV

El Tribunal Supremo federal, al interpretar el alcance de la limitación impuesta a los estados –aunque en el contexto de un estatuto distinto al que aquí contemplamos[3]– juzgó que no sólo una ley o reglamento estatal dirigido a advertir sobre los mismos riesgos cubiertos por la ley federal estaría vedada, sino que asimismo lo estaría la **consideración y adjudicación de una acción en daños predicada en requisitos de rotulación distintos** a los exigidos por el estatuto, ya que sería difícil decir que esas actuaciones no imponen requisitos o prohibiciones. *Cipollone* v. *Liggets Group, Inc.,* 505 U.S. 504, 522 (1992). No obstante resolvió que las reclamaciones estatales en daños y perjuicios en contra del fabricante, cuando la reclamación estuviese basada en la teoría de que éste falló en proveer advertencias suficientes para que el producto sea uno razonablemente seguro, no estaban desplazadas. *Cipollone* v. *Liggets, supra*, a la pág. 524.

Así también, ese alto tribunal resolvió en *Medtronic Inc.* v. *Lora Lohr*, 518 U.S. 470 (1996), que una disposición sobre ocupación del campo –análoga a la de la FHSA– no desplazaba una causa de acción estatal en daños y perjuicios contra el fabricante de un marcapasos.[4]

---

[3] La Public Health Cigarette Smoking Act of 1969, 15 U.S.C.A. sec. 1334(b), que dispone:

> "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter".

[4] En este caso la controversia giraba en torno a una sección de la Medical Device Amendments, 21 U.S.C.A. sec. 360k(a), la cual dispone:

Allí Medtronic alegó que cualquier causa de acción en contra de un fabricante, representaba un requisito adicional a los impuestos por la ley federal, y que por lo tanto la misma estaba desplazada por dicho estatuto. El Tribunal determinó que esta teoría no era persuasiva ni plausible, ya que representaría un impedimento para proteger a los consumidores contra los riesgos que resulten del uso de un producto.

Por otra parte, en *Worm* v. *American Cyanamid Co.*, 970 F.2d 1301, 1305 (4th Cir. 1992), la Corte de Apelaciones de los Estados Unidos para el Cuarto Circuito, interpretó una disposición de la Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C.A. secs. 136 *et seq.* (FIFRA) que dispone:

> [...] but states shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

Esta es una disposición análoga a la de la FHSA, en lo que respecta al desplazamiento de la ley estatal, analogía que ha sido avalada por el Noveno Circuito en *Chemical Specialties* v. *Allenby*, 958 F.2d 941, 945 (9th Cir. 1992).[5] Allí se determinó que las controversias sobre desplazamiento que surgen de la FHSA son idénticas a las que surgen bajo FIFRA, ya que ambas disposiciones son muy parecidas.

En *Worm, supra,* el tribunal resolvió que si el derecho común del estado reconocía una acción en daños y perjuicios por no cumplir con un requisito impuesto por FIFRA, un demandante podía entablar dicha acción sin que existiera un conflicto con la legislación federal. *Worm, supra,* a la pág. 1308.

Aplicando el principio de *Worm, supra,* el Cuarto Circuito interpretó que la FHSA no desplaza una acción estatal de daños y perjuicios basada en el incumplimiento del fabricante con un requisito

---

"no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement (1) which is different from, or in addition to, any requirement applicable under this chapter to the device..."
[5] *Cert. denied*, 506 U.S. 825, 113 S.Ct. 80 (1992).

federal sobre advertencias en las etiquetas. *Moss* v. *Parks Corp.*, 985 F.2d 736, 740-741 (4th Cir. 1993). Allí el tribunal expresó:

> [...]in an area of limited Congressional preemption such as the FHSA, a common law tort action based upon failure to warn may only be brought for non-compliance with existing federal labeling requirements. *Id.* a la pág. 740.

En *Moss, supra,* el tribunal concluyó que siempre y cuando el demandante alegue que el fabricante no cumplió con algún requisito impuesto por la FHSA sobre advertencias en las etiquetas, y no alegue que el producto requería advertencias más rigurosas que las que exige la ley federal, su causa de acción no está desplazada por la FHSA. *Id.* a la pág. 740-741.

Otros foros federales han establecido, que distinto a otros estatutos federales, los requisitos que establece la FHSA van mas bien dirigidos al uso de ciertas palabras o términos de advertencia, tales como "PRECAUCION" o "PELIGRO", permitiendo que el fabricante escoja el lenguaje específico con el que acompañará tales avisos. *Chemical Specialties Manufacturers Ass., Inc.* v. *Allenby*, 744 F. Supp. 934, 936 (N.D.Cal. 1990). Esto quiere decir que existe flexibilidad en cuanto al lenguaje que utilizará el fabricante para advertir sobre las **medidas de precaución que deben seguirse o evitarse al utilizar el producto, requisito exigido por la sección 1261(p)(1)(F) de la FHSA,** *supra*.

En torno a esta sección de la FHSA el Tribunal Supremo de Ohio realizó un análisis en *Jenkins* v. *James B. Day & Co.,* 634 N.E.2d 998 (1994). Ese foro resolvió que este inciso impone a los fabricantes de sustancias peligrosas un deber de advertir de forma razonable y adecuada sobre las medidas de precaución a tenerse en cuenta al manejar dicha sustancia, lo cual era exigido por la ley estatal. Concluyó que la ley estatal y la causa de acción en daños y perjuicios no buscaban imponer requisitos diferentes a los impuestos por la FHSA, y que por lo tanto éstas no estaban desplazadas por el estatuto federal.

V

En el caso ante nos los demandantes alegan esencialmente un incumplimiento de Comstar con los requisitos impuestos por la sección 1261 de la FHSA, y basado en ello instaron una demanda en daños y perjuicios por ésta haber incumplido con las disposiciones de dicha legislación. Esto debido a que, según alega el demandante, siguió las instrucciones del *Hot Power*, y aún así sufrió quemaduras causadas por el producto. Ante esta reclamación Comstar alega que la misma está desplazada por la FHSA.

Al instarse esta acción en daños y perjuicios, reclamando responsabilidad absoluta extracontractual al fabricante bajo la FHSA por éste no haber cumplido con los requisitos impuestos por dicha ley, hay que examinar la reclamación a la luz de los requisitos exigidos por el estatuto federal. Esto así, para determinar si los requerimientos del demandante lo que buscan es imponer nuevos requisitos, diferentes a los contemplados por la ley, o si por el contrario lo que buscan es imponer responsabilidad al fabricante por no haber cumplido con proveer las advertencias que requiere la FHSA.

Hemos examinado la reclamación de los demandantes en el presente caso y determinamos que ésta no está desplazada por la FHSA, ya que no busca imponer requisitos diferentes a los impuestos por dicho estatuto. La causa de acción de los demandantes está basada en la determinación de si las advertencias que Comstar colocó en la etiqueta eran suficientes para cumplir con el inciso (p)(1)(F) de la sección 1261, el cual exige que los fabricantes adviertan sobre las medidas a tomar o evitarse en el manejo del producto.

Esto así, ya que como expusiéramos anteriormente, el propósito de la FHSA es uniformar la información que deben contener en sus etiquetas los productos o substancias peligrosas, requiriendo el uso de ciertas palabras o términos de advertencia (las llamadas "signal words"), permitiendo que el fabricante escoja el lenguaje específico con el que acompañará tales avisos. *Chemical Specialties Manufacturers Ass, Inc.* v. *Allenby*, *supra*, a la pág. 936. Es decir, que existe flexibilidad

dentro de algunos de los requisitos exigidos por la sección 1261 de la FHSA, dependiendo del producto o substancia peligrosa de que se trate. Este es el caso del mencionado inciso (p)(1)f). En éste no se exigen unas advertencias específicas, sino que se establece un requisito general para que se informe a los consumidores sobre el manejo y las medidas de precaución particulares a cada producto.

En vista de la discusión que precede y en ausencia de precedentes tanto locales como del Tribunal Supremo federal, adoptamos la norma establecida por los demás tribunales federales, en cuanto a que la FHSA no desplaza una acción en daños y perjuicios en contra del fabricante de una sustancia peligrosa por éste no cumplir con alguno de los requisitos impuestos por la ley federal. Esto, teniendo en consideración que aunque no es obligatorio seguir dicha norma federal, sí es de gran valor persuasivo y a la vez se conforma con nuestra tradición jurídica en el campo de la responsabilidad absoluta por productos defectuosos o peligrosos.

Esto así ya que es norma reiterada de derecho en nuestra jurisdicción que los fabricantes o vendedores de productos son responsables extracontractualmente por los daños causados por productos defectuosos o peligrosos. *Rivera Santana* v. *Superior Packaging*, 132 D.P.R. 115 (1992).

Es preciso además, hacer una distinción. En la Petición de *Certiorari* y en el Alegato de los recurridos se discute ampliamente, desde diferentes perspectivas, lo que resolvimos en *Aponte Rivera* v. *Sears Roebuck*, res. el 24 de febrero de 1998, 98 T.S.P.R. 12, 98 J.T.S. 12. Asimismo, la sentencia dictada por el Tribunal de Circuito de Apelaciones en este caso, y objeto del presente recurso, elabora sobre la referida opinión. Creemos conveniente precisar.

En *Aponte Rivera, supra,* teníamos ante nuestra consideración la explosión de una batería de automóvil. Allí enumeramos unos criterios o advertencias que deben contener aquellos productos inherentemente peligrosos en sus etiquetas. No se nos planteó la posible aplicabilidad

de la FHSA a tal situación.[6] Lo que hicimos en *Aponte Rivera, supra,* fue enumerar criterios a seguir para determinar la adecuacidad o falta de ella de las advertencias de productos inherentemente peligrosos, no sobre productos que caen bajo la FHSA.

En el caso de marras, distinto a *Aponte Rivera, supra,* estamos ante un producto que cae bajo el ámbito de la FHSA. Es por ello que los criterios o requisitos a aplicar a la situación presente son los que establece la referida legislación federal.

Una vez resuelto lo anterior, nos resta determinar si el mecanismo de sentencia sumaria es el apropiado para dirimir una controversia sobre si un fabricante cumple o no con los requisitos impuestos por la FHSA.

VI

La sentencia sumaria es un mecanismo procesal extraordinario que tiene el propósito de facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales y, por tanto, no ameritan la celebración de un juicio en su fondo. *Pilot Life Ins. Co.* v. *Crespo Martínez*, res. el 13 de julio de 1994, 136 D.P.R. __ (1994),94 J.T.S. 104.

Así, la Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece que se podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, surge que no hay controversia real sustancial en cuanto a ningún hecho material, y como cuestión de derecho debe dictarse sentencia a favor de la parte promovente.

---

[6] Sin embargo, es ilustrativo sobre el particular lo que ha ocurrido en otras jurisdicciones. Enfrentándose a inadecuacidad de advertencias, en situaciones donde baterías de autos han explotado, los tribunales han resuelto conforme la doctrina general de responsabilidad absoluta según desarrollada en cada una de esas jurisdicciones y no bajo la FHSA. Véase: *Tanner* v. *Shoupe,* 596 N.W.2d 805 (1999). Véase además: *Hickman* v. *Exide*, 679 So.2d 527 (1996); *McKnight* v *Johnson Controls, Inc.,* 36 F.3d 1396 (1994); *Daniels* v. *GNB, Inc.,* 629 So.2d 595 (1993).

Sólo procede dictar sentencia sumaria cuando surge claramente que el promovido por la moción no puede prevalecer bajo ningún supuesto de hechos y que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Corp. Presiding Bishop* v. *Purcell*, 117 D.P.R. 714 (1986). Cuando no existe una clara certeza sobre todos los hechos de la controversia, no procede una sentencia sumaria. *Metropolitana de Préstamos* v. *López de Victoria*, res. el 1ro. de noviembre de 1996, 141 D.P.R. __ (1996), 96 J.T.S. 138.

Al dictar sentencia sumaria el tribunal: (1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Properties* v. *General Accident*, res. el 7 de septiembre de 1994, 136 D.P.R. __ (1994), 94 J.T.S. 116.

En el presente caso, según surge de los autos, existe una genuina controversia de hechos sobre si el producto cumplió con los requisitos impuestos por la FHSA. La correcta dilucidación de este asunto le corresponde al Tribunal de Primera Instancia en un juicio plenario, en el cual deberá estudiar las alegaciones de las partes y la prueba presentada a la luz de la FHSA. Así también analizará el caso a la luz de nuestra doctrina de responsabilidad absoluta de los fabricantes, en cuanto a lo que sea compatible con lo aquí resuelto.

De igual forma, le corresponde al tribunal de instancia dilucidar el cuarto señalamiento de error presentado por Comstar a los efectos de determinar si el *Hot Power* es un producto "inherentemente peligroso".

VII

Concluimos, que el desplazamiento que la FHSA provee es uno limitado en cuanto a las advertencias de las sustancias peligrosas. Por lo tanto, establecemos que una acción en daños y perjuicios por no

cumplir con los requisitos establecidos en dicho estatuto federal no está desplazada por dicha ley.

Resolvemos además que cuando existe controversia de hechos materiales sobre si un fabricante cumplió o no con los requisitos impuestos por la FHSA, no procede dictar sentencia sumaria.

Es imperativo notar que el análisis establecido en esta opinión en nada altera el derecho vigente sobre la responsabilidad absoluta del fabricante por inadecuacidad de las advertencias, en los productos que no están cobijados bajo el palio de la FHSA.

Por los fundamentos expuestos con anterioridad confirmamos la sentencia del Tribunal de Circuito de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para procedimientos compatibles con lo aquí resuelto.

Se dictará la sentencia correspondiente.


BALTASAR CORRADA DEL RIO
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| ARIEL HERNÁNDEZ VILLANUEVA;<br>ARMINDA PÉREZ HERNÁNDEZ y la<br>Sociedad Legal de Gananciales<br>compuesta entre ambos | * | |
| Demandantes- Recurridos | * | |
| v. | * | CC-1998-676 |
| MIGUEL HERNÁNDEZ, y la Sociedad<br>Legal de Bienes Gananciales<br>compuesta por él y la señora<br>GLADYS VILLANUEVA SOLTREN; M.M.<br>ENTERPRISE; GÓMEZ & SANTURIO | * | Certiorari |
| Demandados | * | |
| v. | * | |
| I.P.C. DIVISION OF COMSTAR<br>INTERNATIONAL, INC. | * | |
| Demandada-Peticionaria | * | |

**********************************

SENTENCIA

San Juan, Puerto Rico, a 27 de enero de 2000.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se dicta sentencia confirmando la sentencia del Tribunal de Circuito de Apelaciones de 30 de junio de 1998 y se devuelve el caso al Tribunal de Primera Instancia para procedimientos compatibles con lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García concurre con el resultado sin opinión escrita.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo