*1173 TEXTO COMPLETO DE LA SENTENCIA
I
La controversia entre las partes está relacionada con el caudal relicto dejado por el Sr. Heriberto Rivera Aponte, quien falleció en Cayey el 15 de julio de 1998, a la edad de 82 años. El causante no dejó descendientes. Al momento de su muerte estaba casado con la apelada María del Carmen Martínez Jara, de origen mexicano, con quien había contraído matrimonio varios años antes.
Los apelantes son una hermana y trece sobrinos del apelante, quienes le sobreviven. [1]
Según se desprende de los escritos de las partes, al momento de su muerte, el causante dejó bienes en exceso de $1,000,000.
Varios años antes de su muerte, el 24 de octubre de 1993, el causante otorgó un testamento abierto en Cayey ante el Notario Público Ledo. Ausberto Guerrero Rodríguez. Mediante el instrumento, el causante le dejó la mayor parte de sus bienes a su esposa, la apelada, en calidad de legados.
*1174 El causante también estableció un legado de $10,000 a favor de su hermana Ramona y legados de $2,000 a favor de cada uno de sus sobrinos. También dejó un legado de $1,000 a favor de la Iglesia Nuestra Señora de la Asunción en Cayey.
El causante dispuso que estos legados se pagaran en efectivo y que “de no haber suficiente efectivo a su fallecimiento, se reducirán en forma proporcional ... y de no haber efectivo, no habrá legados para ellos, quedando los bienes muebles e inmuebles para su esposa María del Carmen Martínez Jara”.
Como testigos instrumentales del testamento, comparecieron las señoras Lucía Padilla Rivera y Belkis Brito de Crespo y el Sr. Cándido Osmin Crespo Crespo. Este último ya falleció. El Notario expresó que el testamento había sido otorgado a las 5:15 p.m. Esta aseveración aparece en una letra a maquinilla distinta de la empleada para el resto del testamento. El Notario aseveró que, a su juicio, el causante gozaba de la capacidad necesaria para otorgar el testamento.
En el 2000, los apelantes instaron la presente demanda sobre impugnación de testamento contra la apelada ante el Tribunal de Primera Instancia, Sala Superior de Guayama. En su demanda, los apelantes alegaron que el testamento otorgado por el causante era nulo debido a que, al momento de su otorgamiento, el causante no contaba con la capacidad para el negocio. Los apelantes alegaron que, en ese momento, el causante tenía 77 años, que apenas sabía leer y escribir, que desde hacía 10 años padecía de múltiples enfermedades y que “se le olvidaban las cosas”. Los apelantes alegaron que el causante no concatenaba sus pensamientos y que la apelada estaba consciente de su condición.
Los apelantes se quejaron de que el Notario no solicitó una certificación médica sobre la condición del causante. Alegaron que la escritura otorgada también tenía otras anomalías, a saber, que la hora del otorgamiento aparecía en letras distintas a las del resto del documento y que las iniciales del testador no eran legibles ni eran similares.
Los apelantes solicitaron que se declarase la nulidad del testamento, que se privase a la apelada de la administración de los bienes del caudal y que se llamase a la apertura de la sucesión intestada del causante.
La apelada contestó la demanda y negó las alegaciones. Las partes comenzaron el descubrimiento de prueba.
Luego de otros incidentes, la apelada presentó una moción de sentencia sumaria en la que alegó que los apelantes carecían de prueba para sostener sus alegaciones. La apelada incluyó declaraciones juradas de las testigos instrumentales que comparecieron al otorgamiento del testamento, quienes aseveraron que ellas estuvieron presentes en el acto, que el Notario leyó en voz alta el testamento, que el causante pareció entender la naturaleza del procedimiento y que expresó, a preguntas del Notario, que todo estaba bien como él lo deseaba y que el testamento era su voluntad. Las testigos aclararon que el Notario había realizado ciertas correcciones a la escritura, que se pasaron en maquinilla.
La parte apelada también presentó copia de varias escrituras otorgadas por el causante con posterioridad al testamento, donde los Notarios habían dado fe de su capacidad, así como de numerosos cheques cancelados firmados por el causante.
Los apelantes se opusieron a la moción de la apelada. Posteriormente, solicitaron que se dictara sentencia sumaria a su favor.
Las partes presentaron escritos adicionales en apoyo de sus respectivas posiciones. La parte apelada reiteró su solicitud de sentencia sumaria y ofreció el informe de un perito en caligrafía quien opinó que la firma y las *1175 iniciales que aparecían en el testamento correspondían al causante. La apelada explicó que la hora del otorgamiento aparecía escrita en una maquinilla distinta, al igual que la página de las firmas, porque el Notario se había llevado su maquinilla a la casa y había realizado correcciones a la escritura, previo a la firma.
Los apelantes, por su parte, depusieron a las testigos instrumentales de la escritura, el 3 de diciembre de 2004. Alegaron que, conforme al testimonio de la Sra. Padilla, el otorgamiento fue entre 5:30 y 6:00 de la tarde, mientras que la Sra. Belkis Crespo declaró que el acto se realizó a las 3:00 p.m. Los apelantes alegaron que ello implicaba que no había existido la unidad requerida en el negocio, por lo que procedía que el Tribunal dictara sentencia sumaria a su favor. Los apelantes sometieron al Tribunal las porciones pertinentes de las deposiciones tomadas. Aunque las testigos diferían en su declaración sobre la hora del testamento, ambas declararon que todos los testigos y el testador habían estado presentes durante el acto de lectura y la firma del documento.
Los apelantes también ofrecieron que habrían de someter evidencia médica para establecer que el causante no gozaba de capacidad al momento de otorgar el testamento, pero nunca lo hicieron.
Pendiente la adjudicación de las solicitudes de sentencia sumaria de las partes, el Tribunal señaló la conferencia con antelación al juicio. El 9 de junio de 2006, las partes suscribieron el informe sobre conferencia preliminar. La parte apelada explica que el informe fue redactado separadamente por los abogados de cada parte, quienes no se reunieron. El informe resultante contenía propuestas estipulaciones de cada parte. Los apelantes propusieron que se estipulara que las dos testigos instrumentales habían declarado que habían firmado el testamento a horas distintas.
El informe fue presentado ante el Tribunal el 23 de junio de 2006.
Luego de otros incidentes, el 3 de enero de 2007, mediante la sentencia apelada, el Tribunal declaró con lugar la moción de sentencia sumaria presentada por la apelada.
En su sentencia, el Tribunal de Primera Instancia determinó que de la escritura de testamento surgían la fecha, lugar y hora del testamento, la firma e iniciales de los testigos, que el causante y éstos habían suscrito el instrumento y colocado sus iniciales, que el Notario había dado fe de la unidad de acto, del contenido del documento y que, a su juicio, el causante tenía la capacidad para otorgar el testamento. El Tribunal consideró que, en estas circunstancias, no existía controversia sobre los hechos esenciales. Entendió que el instrumento cumplía con todos los requisitos legales.
El Tribunal rechazó la contención de los apelantes de que el testamento era nulo porque no había existido unidad de acto. El Tribunal expresó que del testimonio de las testigos se desprendía que había concurrido la unidad requerida. El Tribunal consideró que la discrepancia en los testimonios de las dos testigos sobre la hora del otorgamiento probablemente obedecía al largo tiempo transcurrido entre la firma del testamento y la fecha de la deposición (once años).
El Tribunal desestimó la demanda. Insatisfechos, los apelantes acudieron ante este Tribunal.
II
En su recurso, los apelantes plantean que el Tribunal erró al declarar con lugar la moción de sentencia sumaria de la apelada y al denegar la moción de sentencia sumaria de los apelantes.
La norma, según se conoce, es que procede emitir una sentencia sumaria en un caso cuando no existe controversia real sustancial en cuanto a ningún hecho material y como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. Vera v. Dr. Bravo, 161 D.P.R. _ (2004), 2004 J.T.S. 40, a *1176 la pág. 744; P.A.C. v. E.L.A. I, 150 D.P.R. 359, 374 (2000); Pinero v. A.A.A., 146 D.P.R. 890, 904 (1998); Soc. de Gananciales v. Vélez & Asoc., 145 D.P.R. 508, 526 (1998); 32 L.P.R.A. Ap. III, R. 36.3.
Si existen dudas sobre la procedencia de la sentencia sumaria, sin embargo, el Tribunal debe brindar a las partes la oportunidad de una vista evidenciaria. Véanse, S.L.G. v. S.L.G., 150 D.P.R. 171, 193 (2000); Rivera v. Depto. de Hacienda, 149 D.P.R. 141, 158 (1999); Bonilla Medina v. P.N.P., 140 D.P.R. 294, 304 (1996); Rivera et al. v. Superior Pkg., Inc., et al., 132 D.P.R. 115, 133 (1992).
Al adjudicar una moción de sentencia sumaria, el Tribunal debe considerar la totalidad de las alegaciones y documentos que obren en el récord, los cuales se toman de la manera más favorable a la parte que se opone a la moción. PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881, 913 (1994); Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 721-723 (1986); Flores v. Municipio de Caguas, 114 D.P.R. 521, 525 (1983); Padín v. Rossi, 100 D.P.R. 259, 263-264 (1971).
El peso para demostrar que no existe controversia real sustancial sobre los hechos materiales inicialmente recae sobre la parte que solicita la sentencia sumaria. Vera v. Dr. Bravo, 2004 J.T.S. 40, a la pág. 745; Soto v. Rivera, 144 D.P.R. 500, 518 (1997); Pilot Life Ins. Co. v. Crespo Martínez, 136 D.P.R. 624, 632 (1994). La parte opositora se ve entonces en posición de poner en controversia los hechos presentados por el promovente. Soto v. Rivera, 144 D.P.R. a la pág. 518; Pilot Life Ins. Co. v. Crespo Martínez, 136 D.P.R. 624, 632 (1994).
Una vez la moción de sentencia sumaria ha sido presentada y se sostenga en la forma provista por la Regla 36 de las de Procedimiento Civil, la parte contraria no puede descansar solamente en las aseveraciones o negaciones contenidas en su demanda, sino que viene obligada a contestar en forma tan detallada y específica, como lo hubiere hecho la parte promovente, exponiendo los hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. De no hacerlo, debe dictarse sentencia sumaria en su contra, si procediere en derecho. Véase, la Regla 36.6 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.6; Audiovisual Lang. v. Sis. Est. Natal Hermanos, 144 D.P.R. 563, 576 (1997); Pilot Life Ins. Co. v. Crespo Martínez, 136 D.P.R. a la pág. 633.
En la situación de autos, según hemos visto, se trata de una demanda de impugnación de testamento instada por los apelantes contra la apelada.
En nuestro ordenamiento, según se conoce, el otorgamiento de un testamento abierto se considera un acto solemne cuya eficacia depende de que se observen los requisitos que impone la ley. Deliz et ais. v. Igartúa et ais., 158 D.P.R._(2003), 2003 J.T.S. 7, a la pág. 424; Rivera Pitre v. Galarza Martínez, 108 D.P.R. 565, 567-568 (1979).
El Art. 612 del Código Civil dispone que no pueden testar, entre otros, aquellos que no se hallan en su cabal juicio. 31 L.P.R.A. see. 2112.
El Tribunal Supremo ha explicado que “una persona no está en su cabal juicio si la integridad de sus facultades intelectuales ha quedado menoscabada hasta el punto de que la persona no tiene conciencia de sus actos, y si la perturbación mental real y positivamente ha impedido o mermado la lucidez de la inteligencia con eficacia bastante para constituir a la persona en un ente privado de razón”. Jiménez v. Jiménez, 76 D.P.R. a la pág. 718, 738 (1954).
Se trata de una cuestión a ser adjudicada primordial mente por el tribunal sentenciador. Jiménez v. Jiménez, 76 D.P.R. ala pág. 731.
La edad avanzada del testador, por sí sola, es insuficiente para demostrar su incapacidad mental. Andino v. *1177 Andino, 83 D.P.R. 138, 139 (1961); Jiménez v. Jiménez, 76 D.P.R. a la pág. 734. Tampoco la simple rareza o excentricidad de carácter que pueda exhibir la persona. Jiménez v. Jiménez, 76 D.P.R. a la pág. 724; Ortiz v. Bermúdez, 70 D.P.R. 707, 713 (1949).
Para apreciar la capacidad del testador, ha de atenderse únicamente al estado en que se hallaba al tiempo de otorgar el testamento. 31 L.P.R.A. see. 2115; Jiménez v. Jiménez, 76 D.P.R. a la pág. 732; Ortiz v. Bermúdez, 70 D.P.R. a la pág. 712.
La capacidad del testador siempre se presume, en ausencia de una declaración judicial o de prueba específica en contrario. Rivera y otros v. Bco. Popular, 152 D.P.R. 140, 157 (2000); véase, además, Rodríguez Sardenga v. Soto Rivera, 108 D.P.R. 733 (1979). El peso corresponde a la parte que impugna el testamento para derrotar esta presunción mediante prueba clara y convincente. Jiménez v. Jiménez, 76 D.P.R. a la pág. 733; Ortiz v. Bermúdez, 70 D.P.R. a la pág. 713.
Un testamento también puede ser nulo si no cumple con las formalidades exigidas por ley. 31 L.P.R.A. see. 2152.
La función principal de estas solemnidades es hacer imperecedera la voluntad del causante, ya que una vez muere el testador, es imposible realizar una investigación sobre ésta. Deliz et ais. v. Igartúa et als., 2003 J.T.S. 7, a la pág. 424.
En estos casos, las formalidades no se consideran meras cuestiones de evidencia, sino que son un requisito sustantivo para la existencia del testamento. In re: Irlanda Pérez, 162 D.P.R. _ (2004), 2004 J.T.S. 110, a la pág. 1,276; Deliz et als. v. Igartúa et als., 2003 J.T.S. 7, a la pág. 424.
Ahora bien, no toda omisión en que pueda incurrir un notario conlleva la nulidad del testamento. Moreno v. Martínez, 168 D.P.R. _ (2006), 2006 J.T.S. 115, a la pág. 1,539; Deliz et als. v. Igartúa et als., 2003 J.T.S. 7, a la pág. 424; Pacheco v. Sucn. Pacheco, 66 D.P.R. 796, 801-802 (1947).
Debe distinguirse entre las solemnidades de fondo y las de forma. Moreno v. Martínez, 2006 J.T.S. 115, a la pág. 1,540; Deliz et als. v. Igartúa et als., 2003 J.T.S. 7, a la pág. 425.
Las formalidades de fondo son las que la ley exige que aparezcan expresamente consignadas en la escritura del testamento. Su cumplimiento debe surgir de la faz del documento, sin que pueda subsanarse la omisión mediante la presentación de prueba extrínseca. Como se trata de requisitos esenciales, su incumplimiento produce la nulidad ab initio del testamento. Moreno v. Martínez, 2006 J.T.S. 115, a la pág. 1,540; Deliz et als. v. Igartúa et ais., 2003 J.T.S. 7, a la pág. 425; Paz v. Fernández, 76 D.P.R. 742, 752-753 (1954); véase, por ejemplo, In re: Santiago Rodríguez, 160 D.P.R. _ (2003), 2003 J.T.S. 137, a la pág. 82 (requisito de que el notario dé fe del conocimiento del testador es una formalidad solemne, con efecto de nulidad del testamento si no se satisface); 31 L.P.R.A. sec. 2150.
Por su parte, el cumplimiento de las solemnidades de forma o externas no tiene que surgir de la faz del testamento. No obstante, el instrumento es nulo si no son observadas. Deliz et als. v. Igartúa et als., 2003 J.T.S. 7, a la pág. 425; Paz v. Fernández, 76 D.P.R. a la pág. 752.
El Tribunal Supremo de Puerto Rico ha advertido que lo anterior no implica el culto irreflexivo a la forma. Moreno v. Martínez, 2006 J.T.S. 115, a la pág. 1,540. No todas las formalidades conllevan siempre el mismo valor ni la falta de cualquiera de ellas requiere inexorablemente la anulación de un testamento. Moreno v. Martínez, 2006 J.T.S. 115, a la pág. 1,539.
*1178 Entre otras formalidades requeridas, el Art. 649 del Código Civil exige que exista unidad de acto en el otorgamiento de todo testamento abierto. 31 L.P.R.A. sec. 2186; In re: Irlanda Pérez, 2004 J.T.S. 110, a la pág. 1,277; Andino v. Andino, 83 D.P.R. a la pág. 139; Paz v. Fernández, 76 D.P.R. a la pág. 745; Cintrón v. Cintrón, 70 D.P.R. 770, 775-776 (1950); véase, además, 4 L.P.R.A. sec. 2042 (Supl. 2006).
El incumplimiento con este requisito conlleva la nulidad del testamento.. In re: Medina Adorno, 113 D.P.R. 177, 179 (1982).
El Tribunal Supremo de Puerto Rico ha aclarado que la unidad requerida no ha de entenderse en el sentido de que haya de redactarse y firmarse el testamento en una sola sesión, sino que la lectura del testamento, la manifestación de la voluntad del testador y la firma de éste y de las demás personas debe llevarse a cabo sin interrupción ninguna. Paz v. Fernández, 76 D.P.R. a la pág. 745; Cintrón v. Cintrón, 70 D.P.R. a la pág. 775. No se requiere la presencia del testador y los testigos en el período preparatorio a la redacción del testamento. Cintrón v. Cintrón, 70 D.P.R. a las págs. 774-775.
En el presente caso, los apelantes alegan en su demanda que, al momento de otorgar el testamento, el causante carecía de la capacidad necesaria. Lo cierto es, sin embargo, que la parte apelada presentó evidencia tendente a establecer que, para la fecha de los hechos, el causante otorgó otros contratos y suscribió varios cheques, lo que sugiere que gozaba de la capacidad necesaria para actuar.
El causante nunca fue declarado incapaz, por lo que ha de presumirse su capacidad para testar. Rivera y otros v. Bco. Popular, 152 D.P.R. a la pág. 157 (2000); Jiménez v. Jiménez, 76 D.P.R. a la pág. 733; Ortiz v. Bermúdez, 70 D.P.R. a la pág. 713. Así lo certificó el Notario autorizante. Las testigos instrumentales del testamento también indicaron que el causante participó en el acto del otorgamiento y que lo entendió.
El hecho de que fuese una persona de edad avanzada resulta insuficiente para derrotar la presunción de su capacidad. Andino v. Andino, 83 D.P.R. a la pág. 139; Jiménez v. Jiménez, 76 D.P.R. a la pág. 734.
A pesar de que los apelantes alegaron que ofrecerían evidencia para cuestionar la capacidad del causante para testar, nunca lo hicieron, aunque han transcurrido más de siete años de litigio.
Los apelantes también plantean que el otorgamiento del testamento no cumplió el requisito de unidad de acto. Señalan que una de las testigos instrumentales declaró que ella había firmado a las 3:00 de la tarde, mientras que la otra testificó que el testamento había sido otorgado entre 5:30 y 6:00 p.m. El Tribunal de Primera Instancia entendió que esta discrepancia era inconsecuente porque las testigos habían declarado que tanto los testigos como el causante habían concurrido al acto de la lectura y firma del testamento. El Tribunal consideró que la discrepancia en los testimonios era explicable porque había pasado más de una década del otorgamiento del testamento.
Somos de la opinión que el Tribunal no abusó de su discreción al así actuar. Lo cierto es que las testigos del testamento han declarado que ellas estuvieron presentes junto con el testador durante el acto de la lectura y firma del instrumento. El Notario otorgante también certificó que se había cumplido con las formalidades exigidas por ley.
La contención de los apelantes de que existe controversia sobre la existencia del requisito de la unidad de acto descansa únicamente en una discrepancia entre las testigos sobre la hora a la que se suscribió el documento. Al igual que el Tribunal de Primera Instancia, somos de la opinión que esta discrepancia no es material y que es insuficiente para establecer una controversia sobre el asunto, a la luz del resto de la declaración de las testigos, ambos afirmaron que el causante y los testigos estuvieron presentes durante la lectura y firma del testamento, intervalo en el que precisamente debe darse la unidad de acto.
*1179 Los apelantes plantean que el Tribunal debió dictar sentencia sumaria a su favor porque en el informe sobre conferencia preliminar las partes estipularon que las testigos instrumentales firmaron el testamento a horas distintas, lo que establece que no hubo unidad de acto en el otorgamiento. Lo cierto es que, del propio informe se desprende que las estipulaciones en cuestión no fueron aceptadas por ambas partes. Al contrario, cada parte presentó estipulaciones propuestas. En estas circunstancias, no entendemos que la apelada esté impedida de controvertir la posición de los apelantes. Cf., Reyes Torres v. Collazo Reyes, 118 D.P.R. 730, 733 (1987).
El Tribunal no abusó de su discreción ai adjudicar el caso por la vía sumaria.
Por los fundamentos expresados, se confirma la sentencia apelada.
Lo pronunció y lo manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2007 DTA 62
1. La apelante Ramona Rivera Rivera es hermana del causante. Los apelantes Mayra, Ricardo y Esmeralda, todos de apellidos Rodríguez Rivera, son hijos de doña Ramona y sobrinos del causante.
Los apelantes Aida, Aurelio, Alicia, América, Aurea, Herminia y Adán, todos de apellidos Gutiérrez Rivera, son hijos de Herminia Rivera Aponte, quien era hermana del causante, y son, por lo tanto, sobrinos de éste.
Los apelantes Luis y Carlos Rivera Rivera son hijos de Luis Rivera Aponte, otro hermano del causante, y son sobrinos del causante.
La apelante Julia Rivera Colón es hija de José Rivera Aponte, hermano del causante, y es sobrina del causante.
2. Los apelantes también señalaron que, conforme al testimonio de la Sra. Padilla, el abogado de la parte demandada estuvo presente en el otorgamiento. (Del récord se desprende que el abogado de la parte apelada lo es el Ledo. Eusberto Guerrero Rodríguez, quien supuestamente es hermano gemelo del Ledo. Ausberto Guerrero Rodríguez, Notario que intervino en el otorgamiento de la escritura. Según la parte apelante, ambos abogados estuvieron presentes en el acto del otorgamiento, por lo que debe cuestionarse la participación del Ledo. Eusberto Guerrero como abogado en el caso.)