ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| BRENDA LEE MIRANDA MALDONADO<br><br>APELADOS<br><br>V.<br><br>SUCESION ALEX ORTIZ ORTIZ, YESSICA IVETTE BERNARDI MALDONADO ET. ALS.<br><br>APELANTES | KLAN202301130 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala de Aibonito<br><br>Caso Núm. AI2021CV00474<br><br>Sala: 002<br><br>Sobre:<br><br>Acción Civil, Cumplimiento Específico, Ratificación de Compraventa, Violación Contractual, Daños, Dolo |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Alvarez Esnard y la Jueza Díaz Rivera.

Brignoni Mártir, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 11 de abril de 2024.

Comparecen, Yessica Ivette Bernardi Maldonado (en lo sucesivo, "la señora Bernardi") y la Sucesión de Alex Ortiz Ortiz, compuesta por Keishla Ortiz Bernardi y Aleishka Ortiz Bernardi (en adelante, "la parte apelante"), mediante el recurso de epígrafe. Ello, a los fines de solicitar nuestra intervención para que dejemos sin efecto la determinación emitida el 27 de octubre de 2023 y notificada el 30 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Aibonito. Mediante el referido dictamen, el foro sentenciador declaró *Ha Lugar* la solicitud de sentencia sumaria presentada por Brenda Lee Miranda Maldonado, (en lo sucesivo, "la apelada"). En consecuencia, desestimó la Reconvención presentada por la parte apelante.

## I.

El 13 de diciembre de 2021, la apelada presentó la "*Demanda*" de epígrafe. En lo pertinente, adujo que entabló una relación contractual con la señora Bernardi y su entonces concubino Alex David Ortiz Ortiz (en

adelante "el señor Ortiz"). Específicamente, acordaron el perfeccionamiento de un contrato de opción de compra. En dicho otorgamiento, la apelada compareció como parte optante y la señora Bernardi y el señor Ortiz como los promitentes del derecho de opción de compra. La finca objeto del negocio jurídico fue un inmueble sito en la Urbanización Colinas de San Francisco de Aibonito. Al momento del acuerdo, la referida propiedad estaba gravada por dos (2) hipotecas. La primera, adeudaba una suma principal de $97,568.40; más intereses computados a razón de 5.95% anual. La segunda, fue constituida por la obligación principal de $25,000.00; más intereses computados a razón de 5.95% anual.

Como precio de opción de compra, la apelada, quedó obligada a satisfacer la cantidad de $12.713.22. Para completar dicha suma, la apelada pagó a la señora Bernardi y al señor Ortiz la cantidad de $3,000.00 en el acto de celebración del referido contrato de opción de compra. La apelada quedó obligada a abonar la suma restante de $9,713.22 a las hipotecas que gravaban el inmueble objeto de contrato. En lo que respecta al precio de compraventa, este fue acordado por la suma de $130,000.00

Así las cosas, el señor Ortiz falleció el 9 de noviembre de 2012. Luego de este acontecimiento, la apelada adujo que requirió en varias instancias a la señora Bernardi que compareciera al otorgamiento del contrato de compraventa. Esto, mediante comunicaciones escritas en las fechas de 13 de febrero de 2013, 21 de enero de 2014 y 11 de agosto de 2015. Añadió, que la señora Bernardi no respondió a sus misivas. Expresó, que ha residido en la propiedad objeto de opción de compra desde el momento en que adquirió su derecho como optante, por un periodo que excede los diez (10) años. Agregó, que durante dicho término continuó pagando los aludidos gravámenes hipotecarios. Sin embargo, según relató, el 25 de octubre de 2021, la señora Bernardi le comunicó

mediante carta que debía desalojar la propiedad dentro de un término de treinta (30) días.

Ante ello, la apelada solicitó al foro primario que ordenara a la parte apelante que compareciera al otorgamiento de la escritura de compraventa pactada. Además, peticionó una indemnización por dolo contractual; costas; gastos; y honorarios de abogado.

En respuesta, el 14 de febrero de 2022, la parte apelante presentó "*Contestación a Demanda y Reconvención.*" En su alegación responsiva, aceptó el haber otorgado junto a la apelada un contrato de opción de compra. Empero, negó que la apelada haya ejercido o prorrogado el derecho que como optante se le había concedido. En cuanto a la reconvención, argumentó que no existe evidencia de que la apelada haya ejercido a tiempo el derecho de opción de compra, por lo que este caducó. En consecuencia, según adujo, la apelada debía desalojar la propiedad objeto de litigio. Además, peticionó al foro sentenciador una cantidad total de $60,000.00, en concepto de daños sufridos por la posesión precaria que tiene la apelada sobre la propiedad. Solicitó también al referido foro que ordenara a la apelada el pago de costas, gastos y honorarios de abogado por temeridad.

Luego de varios incidentes procesales que no son pertinentes al asunto que nos ocupa, el 25 de agosto de 2023, la apelada presentó escrito intitulado "*Moción de sentencia sumaria para que se dicte sentencia a favor de la demandante, ordenando a la demandada a comparecer a la firma de la escritura de compraventa y otros remedios.*"[1]

---

[1] Acompañó su solicitud de sentencia sumaria con la siguiente prueba documental: documento que acredita la inscripción de la finca objeto de litigio en el Registro de la Propiedad Inmobiliaria; "*Transcripción de deposición de la Sra. Yessica Ivette Bernardi Maldonado*;" "*Contrato de opción de compraventa*;" documento sobre la presentación de una Escritura de Constitución de Hipoteca en el Registro de la Propiedad Inmobiliaria; documento intitulado "*Pagaré Hipotecario*;" "Escritura Número Veinte (20) sobre Constitución de Hipoteca;" copia de dos (2) cheques sellados por Doral Bank; carta con fecha del 13 de febrero de 2013 dirigida a la señora Bernardi; carta con fecha de 21 de enero de 2014 dirigida a la señora Bernardi; carta del 11 de agosto de 2015 dirigida a la señora Bernardi; documento intitulado "*Recibo*;" contrato sobre la construcción de un gazebo de madera; "*Contrato de Remodelación*;" documento intitulado "*Factura*" con fecha del 11 de enero de 2012; documento intitulado "*Factura*" con fecha del 23 de febrero de 2016; documento intitulado "*Factura*" con fecha del 19 de junio de 2018; documento acreditando el recibo de una suma monetaria con fecha del 18 de diciembre de 2018; documento acreditando el recibo de una suma monetaria con fecha del 20 de enero de 2020; documento acreditando el recibo de una suma monetaria con fecha del

Su solicitud se presentó al amparo de la Regla 36.1 Procedimiento Civil, 32 LPRA Ap. V, R. 36.1. En esencia, arguyó que no existía controversia sustancial sobre los hechos esenciales del caso. Entre ellos, que las partes se obligaron a cumplir con un contrato intitulado "*Contrato de opción de compraventa*;" que en virtud del referido contrato obtuvo la posesión de la propiedad objeto de litigio; que estuvo pagando las hipotecas que gravaban la referida finca; que la parte apelante no contestó sus requerimientos escritos sobre la otorgación de la escritura de compraventa; y que la parte apelante no realizó acción alguna para desalojarle de la propiedad durante un término que excede los diez (10) años. Finalmente, solicitó al foro de origen que dictara sentencia sumaria a su favor; ordenara a la parte apelante a comparecer al otorgamiento de la escritura de compraventa; emitiera una orden a los fines de que la parte apelante le entregara un pagaré hipotecario; desestimara la reconvención presentada; y ordenara a la parte apelante efectuar el pago de $10,000.00 en concepto de honorarios de abogado por temeridad.

En reacción, el 25 de septiembre de 2023, la parte apelante presentó "*Replica a Solicitud de Sentencia Sumaria.*" En su escrito argumentó, que la solicitud de sentencia sumaria de la apelada debía ser rechazada de plano. Ello, dado que no incluyó los asuntos en controversia ni la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria. Además, solicitó al tribunal de instancia que dictara sentencia sumaria a su favor.[2] Para sustentar su petitorio, expuso que los

---

26 de marzo de 2021; ; documento acreditando el recibo de una suma monetaria con fecha del 19 de marzo de 2023; Factura de Aibonito Plumbing & Electric; recibo de Home Depot; Recibo de la Ferretería Rivera; Recibo de Caribbean Lumber Aibonito; Recibo de ASDA Privatizada Aibonito Inc; "*Transcripción de la deposición de la sra. Keishla Ortiz Bernardi*;" "*Transcripción de la deposicion de la srta. Aleishka Ortiz Bernardi.*"

[2] Acompaño su petición con la siguiente prueba documental: "*Transcripción de la deposición de la sra. Brenda Lee Miranda Maldonado;*" "*Contrato de Opción de Compraventa*;" documento sobre la presentación de una Escritura de Constitución de Hipoteca en el Registro de la Propiedad Inmobiliaria; documento intitulado "*Pagaré Hipotecario*;" "Escritura Número Veinte (20) sobre Constitución de Hipoteca;" Carta del Banco Pupular dirigida al señor Ortiz y la señora Bernardi, con fecha del 5 de julio de 2022; Carta del Banco Pupular dirigida al señor Ortiz y la señora Bernardi, con fecha del 29 de septiembre de 2022; Carta del Banco Pupular dirigida al señor Ortiz y la señora Bernardi, con fecha del 17 de noviembre de 2022; Carta del Banco Pupular dirigida al señor Ortiz y la señora Bernardi, con fecha del 4 de enero de 2023; Carta del Banco Pupular dirigida al señor Ortiz y la señora Bernardi, con fecha del 17 de febrero de 2023; Carta del Banco Pupular dirigida al señor Ortiz y la señora Bernardi, con fecha del 5 de

siguientes hechos materiales no estaban en controversia: la existencia de una relación contratual entre las parte intitiulada "*Contrato de Opción de Compraventa,*" pactado en la fecha del 8 de diciembre de 2011; que la apelada no ejerció su derecho de opción de compra dentro del periodo de veinticuatro (24) meses, contados a partir del 1 de enero de 2012 hasta el 1 de enero de 2014; la ausencia de acuerdo entre las partes a los fines de prorrogar el contrato de opción de compra; y que la parte apelante envió en la fecha del 25 de octubre de 2021 una carta a la apelada a los fines de solicitarle el desalojo de la propiedad en cuestion.

De otra parte, adujo como hechos controvertidos el tipo de contratación a la que se obligaron las partes y el cumplimiento de estas con las estipulaciones pactadas. Finalmente, solicitó al foro sentenciador que dispusiera del pleito sumariamente y declarara *Ha Lugar* la *Reconvención* presentada. En consecuencia, ordenara el desalojo de la apelada de la propiedad en litigio; le impusiera la apelada una indemnización en daños; el pago de costas, gastos y honorarios de abogado por temeridad; y el pago de sanciones e intereses legales.

Luego de varios trámites procesales que no son necesarios de pormenorizar, el 30 de octubre de 2023, el tribunal de instancia notificó la "*Sentencia Sumaria*" que nos ocupa. Mediante esta, declaró *Ha Lugar* la solicitud de sentencia sumaria de la apelada. Consecuentemente, desestimó con perjuicio la reconvención presentada por la parte apelante. Además, impuso a la parte apelante el pago de costas, gastos y honorarios de abogado. En el referido dictamen, el foro sentenciador expuso las siguientes determinaciones de hechos no controvertidos:

> 1. El 8 de diciembre de 2011 se otorgó contrato intitulado, Contrato de Opción de Compraventa, entre Alex David Ortiz Ortiz, Yessica Bernardi Maldonado, "Los Promitentes," y Brenda Lee Miranda Maldonado, "La Optante," ante el notario María Irizarry Centeno para la propiedad sita calle

---

junio de 2023; Carta del Banco Pupular dirigida al señor Ortiz y la señora Bernardi, con fecha del 5 de mayo de 2023; Carta del Banco Pupular dirigida al señor Ortiz y la señora Bernardi, con fecha del 17 de abril de 2023; Carta del Banco Pupular dirigida al señor Ortiz y la señora Bernardi, con fecha del 4 de abril de 2023; Carta del Banco Pupular dirigida al señor Ortiz y la señora Bernardi, con fecha del 17 de julio de 2023; Carta del Banco Pupular dirigida al señor Ortiz y la señora Bernardi, con fecha del 4 de agosto de 2023; Carta dirigida a la señora Bernardi con fecha del 11 de agosto de 2015.

Beatriz B-1 de la Urbanización Colinas de San Francisco, en Aibonito.

2. Dicha propiedad consta inscrita al folio ciento cuarenta y tres (143) del tomo doscientos quince (215) de Aibonito, Finca número once mil seiscientos treinta y siete (11,637) inscripción segunda.

3. Al momento del contrato, dicha propiedad constaba gravada por dos (2) hipotecas constituidas por Alex David Ortiz Ortiz y Yessica Bernardi Maldonado a favor de Doral Mortgage. La primera por cien mil dólares ($100,000) más intereses y la segunda por veinticinco mil dólares ($25,000) màs intereses.

4. Al momento del contrato, también constaba en el Registro un Aviso de demanda para el caso civil BCD2011-0060 en cobro de dinero y ejecución de hipoteca por la vía ordinaria, instado por Fannie Mae contra Alex David Ortiz Ortiz y Yessica Bernardi Maldonado por la cuantía de $97,568.40 de principal más intereses desde el primero de marzo 2011.

5. El precio de compra fue por $30,000 según surge de la cláusula Uno del contrato de Opción de Compra.

6. Surge de la cláusula dos (2) del contrato que el precio de la Opción fue de $12,713.22 de los cuales, al momento de la otorgación del contrato de compraventa, Alex David Ortiz Ortiz y Yessica Bernardi Maldonado obtuvieron la suma de $3,000 y el restante fue pagado por Brenda Lee Miranda Maldonado al acreedor hipotecario.

7. El derecho de opción debía ejercerse dentro del término de veinticuatro meses (24) contados a partir del 1 de enero de 2012 hasta el 1 de enero de 2014 (cláusula 4) y prorrogado por un término igual al original de dos (2) años previo acuerdo entre las partes (cláusula once).

8. Alex Ortiz Ortiz falleció el 9 de noviembre de 2012.

9. La Sucn. Alex Ortiz Ortiz está compuesta por sus dos hijas mayores de edad, Keishla y Aleishka de apellido Ortiz Bernardi.

10. Alex David Ortiz Ortiz y Yessica Bernardi Maldonado no estaban casados entre sí.

11. Brenda Lee Miranda Maldonado ocupa la propiedad desde 2011.

12. Desde el 2011 al presente Brenda Lee Miranda Maldonado ha efectuado el pago de las hipotecas.

13. Una de las hipotecas fue saldada en su totalidad.

14. Brenda Lee Miranda Maldonado envió carta el 11 de gosto de 2015, siendo recibida por Yessica Bernardi Maldonado
.
15. Dicha carta [sic] lee como sigue:

11 de agosto de 2015

Yessica Ivette Bernardi Maldonado

A la Mano

Hola Yessica:

He tenido dificultad para comunicarme personalmente contigo por [eso] decidí escribirte. Como sabes el 8 de diciembre de 2011 firmamos un contrato sobre la residencia que actualmente vivo. A mi me urge culminar el proceso que pienso se ha tardado bastante. Lamento que ese atraso se deba al fallecimiento de Alex pero necesito culminar este proceso. Como sabes yo pagu[é] todos los atrasos de la casa que estaba en un proceso de ejecución en el Banco Doral. Fui varias veces al banco Doral y allí puse las dos (2) hipotecas que tiene la casa al día. Les pagu[é] tanto a ti como a Alex lo que les correspondía de la casa; en cheques de gerente y me he mantenido durante todos estos meses pagando al día la hipoteca. He pagado mas de $46,000.00 dólares al banco. Necesito hacer el cierre de este asunto y poner las escrituras a mi nombre. He esperado mucho en consideración a que estabas en gestiones por la muerte de Alex. Necesito que me indiques cuandos puedes entregarme los papeles que necesita el banco para cambiar las escrituras a mi nombre. Insisto en expresarle que el trámite no se ha terminado por tu situación ya que siempre he estado disponible para el cierre.
Gracias

16. El 25 de octubre de 2021 los demandados-reconvinientes le solicitaron el desalojo de la propiedad a Brenda Lee Miranda Maldonado.

Inconforme, el 11 de noviembre de 2023, la parte apelante presentó de forma oportuna una "*Solicitud de Reconsideración o Determinaciones Adicionales.*" El 15 de noviembre de 2023, el foro setentenciador notificó una determinación por medio de la cual declaró *No Ha Lugar* el petitorio presentado por la parte apelante. Aun inconforme, el 15 de diciembre de 2023, presentó ante nos una "*Apelación.*" En dicho recurso, señaló los siguientes errores:

**PRIMER ERROR: Erró el Honorable TPI al concluir que el término de la opción de compraventa se prorrogó tácitamente.**

**SEGUNDO ERROR: Erró el Honorable TPI al concluir que la parte demandante-apelada ejerció la opción de compraventa con su carta de 11 de agosto de 2015.**

**TERCER ERROR: Erró el Honorable TPI al desestimar la Reconvención.**

**CUARTO ERROR: Erró el Honorable TPI al imponer a la parte demandada-apelante el pago de costas, gastos y**

**honorarios de abogado a favor de la parte demandante-apelada.**

**II.**

**A. Senetencia Sumaria:**

La sentencia sumaria es un mecanismo procesal cuya función es permitir a los tribunales disponer parcial o totalmente de litigios civiles en aquellas situaciones en las que no exista alguna controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020). *Rodríguez Méndez, et als v. Laser Eye*, 195 DPR 769, 784 (2016); *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 225 (2015).

Se dictará sentencia sumaria cuando las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay u otra evidencia que obre en el expediente del tribunal, demuestren que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente. 32 LPRA Ap. V, R. 36.3 (e). Así, **el criterio rector al considerar la procedencia de un dictamen sumario es que no haya controversia sobre los hechos esenciales pertinentes, según alegados por las partes en sus respectivas solicitudes u oposiciones, y que solo reste aplicar el Derecho**. *Rodríguez García v. UCA*, 200 DPR 929, 941 (2018). Esta determinación debe ser guiada por el principio de liberalidad a favor de la parte que se opone a que se dicte sentencia sumaria, para evitar la privación del derecho de todo litigante a su día en corte. *Ramos Pérez v. Univision*, 178 DPR 200, 216 (2010).

Igual que el Tribunal de Primera Instancia, este Tribunal de Apelaciones se rige por la Regla 36 de Procedimiento Civil, *supra,* y su jurisprudencia al determinar si procede o no una sentencia sumaria. Ello quiere decir que debemos realizar una revisión *de novo* y examinar el expediente de la manera más favorable a la parte que se opuso a la moción de sentencia sumaria en el foro primario, haciendo todas las inferencias permisibles a su favor. *Meléndez González et al v. M Cuebas,*

193 DPR 100, 118 (2015). Analizamos los documentos que acompañan la moción que solicita la sentencia sumaria y los documentos incluidos con la moción en oposición, y aquéllos que obren en el expediente del tribunal; con el fin de determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *S.L.G. v. S.L.G.*, 150 DPR 171, 193 (2000). Si de los documentos surge duda sobre la existencia de una controversia de hechos, éstas se deben resolver contra el promovente, ya que este mecanismo procesal no permite que el tribunal dirima cuestiones de credibilidad. *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020). Este foro intermedio tampoco puede adjudicar los hechos materiales y esenciales en disputa. Esa tarea le corresponde al foro de primera instancia. *Vera v. Dr. Bravo,* 161 DPR 307, 335 (2004).

En fin, nuestra evaluación está limitada a la consideración de la evidencia que las partes presentaron ante el foro de primera instancia. Debemos revisar que los escritos cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*. Además, verificamos si en realidad existen hechos materiales en controversia. Finalmente, de encontrar que los hechos materiales realmente están incontrovertidos, revisamos si la primera instancia judicial aplicó correctamente el Derecho a la controversia. *Meléndez González et al. v. M. Cuebas*, *supra*, págs. 118-119.


**B. Teoría general de los contratos:**

Como es sabido, los contratos son negocios jurídicos bilaterales que constituyen una de las formas de obligación. Art. 1042 del Código Civil, 31 LPRA sec. 2992;[3] *Amador Parrilla v. Concilio Iglesia Universal de Jesucristo*, 150 DPR 571, 581 (2000). Se ha reconocido reiteradamente que en Puerto Rico aplica el principio de la libertad de

---

[3] En el presente caso hacemos referencia a las disposiciones del Código Civil de Puerto Rico del año 1930, dado que, era la legislación general vigente al momento de establecerse la relación contractual que nos ocupa.

contratación. *Guadalupe Solís v. González Durieux,* 172 DPR 676, 683 (2007); *Álvarez de Choudens v. Rivera* 165 DPR 1, 17 (2005); *Arthur Young & Co.* v. *Vega III,* 136 DPR 157, 169 (1994). De acuerdo con este pilar, *las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente*, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. Código Civil de Puerto Rico, *supra*, sec. 3372 (Énfasis suplido). *Álvarez de Choudens v. Rivera*, *supra*, pág. 18. Esto posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, *Fundamentos de Derecho Civil: Doctrina General del Contrato*, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5. El contrato tiene fuerza de ley entre las partes, por lo que se debe cumplir según lo pactado. Art. 1044 del Código Civil, *supra*, sec. 2994.

Ahora bien, para que una relación contractual se perfeccione deben concurrir los elementos de consentimiento, objeto y causa. Código Civil de Puerto Rico, *supra*, sec. 3391; *Quest Diagnostics v. Mun. San Juan*, 175 DPR 994, 999 (2009); *Bosques v. Echevarría*, 162 DPR 830, 836 (2004). En lo que respecta al consentimiento, este comprende dos (2) aspectos fundamentales. El primero, se relaciona a la capacidad de consentir, y el segundo hace referencia a la prestación de ese consentimiento. *Quest Diagnostics v. Mun. San Juan,* supra, pág. 999-1000. En nuestra jurisprudencia se ha reconocido la procedencia tanto de un consentimiento expreso como de un consentimiento tácito. Véase, *Aponte Valentín et al. v. Pfizer Pharm.,* 208 DPR 263, 286 (2021). En el escenario del consentimiento tácito, el elemento determinante "es la conducta de la persona y no las palabras que utilice para expresarlo." *Íd.* Es decir, la forma en que se desarrollen los hechos en cuestión debe revelar de manera inequívoca la voluntad de consentir. *Íd.*

A partir de la existencia de un contrato, sus estipulaciones obligan al cumplimiento de lo expresamente pactado y a las "consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.

Código Civil de Puerto Rico*, supra*, sec. 3375. De igual modo, una vez perfeccionado, el contrato producirá efecto entre las partes y sus herederos, salvo que existan derechos y obligaciones no transmisibles. Código Civil de Puerto Rico, *supra,* 3374. Cabe mencionar, que "si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas." Código Civil de Puerto Rico, *supra,* sec. 1233. Al interpretar un contrato, el análisis que se realice deber ser acorde al principio de la buena fe. S.*L.G. Irizarry v. S.L.G. García,* 155 DPR 713, 727 (2001). Asimismo, para juzgar la intención de los contratantes, se deberán atender los "actos de éstos, coetáneos y posteriores al contrato." Código Civil de Puerto Rico, *supra*, sec. 3472. En síntesis, en el ejercicio de interpretar un contrato "no se puede buscar oscuridad ni tergiversar la interpretación de [este] para llegar a resultados absurdos e injustos." *S.L.G Irizarry v. S.L.F. García,* supra, pág. 726.

**C. Contrato de Opción de Compra:**

El contrato de opción de compraventa no estaba regulado por el Código Civil de 1930,[4] vigente a los hechos que nos ocupan, pero había sido definido jurisprudencialmente como un "convenio por el cual una parte (llamada concedente, promitente u optatario) concede a la otra (llamada optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal". (Citas omitidas). *P.D.C.M. Assoc. V. Najul Bez*, 174 DPR 716, 724 (2008). Esencialmente, nuestro Tribunal Supremo había reconocido la opción de compraventa como un contrato preparatorio o precontrato encaminado al eventual otorgamiento de un contrato de compraventa. Estableció, además, los siguientes elementos esenciales de este tipo de acuerdo:

---

[4] El Código Civil de 2020 reconoce en el Título VIII *Los Derechos de Adquisición Preferente* del Libro Tercero *Los Derechos Reales* los elementos esenciales de la opción de compra; véase, Arts. 1022; 1029-1032, 31 LPRA secs. 8801; 8821-8824.

(1) se concede al optante la facultad de decidir unilateralmente si celebrará el contrato principal (la compra y venta) sin ninguna obligación por parte de éste; (2) dicha concesión tiene carácter de exclusividad; (3) se establece un plazo para ejercitar la opción, y (4) no existe otra condición que no sea la voluntad del optante. *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713, 722 (2001).

Ha expresado nuestro Alto Foro que la opción de compra es un contrato unilateral, porque el optante no está obligado a comprar. *Íd.* Añadió también que "el derecho de opción no sólo concede al optante la facultad de perfeccionar el contrato definitivo mediante la aceptación de la opción, sino que impone al concedente la obligación de no frustrar el derecho del que goza el optante". (Citas omitidas). *P.D.C.M. Assoc. V. Najul Bez*, *supra*.

**D. La concesión de costas, gastos y honorarios de abogado:**

En nuestro ordenamiento los gastos asociados al litigio se distinguen entre costas y honorarios. En cuanto a las costas la Regla 44.1 (a) de Procedimiento Civil, 32 LPRA Ap. V., dispone que se concederán a la parte a cuyo favor se resuelva el pleito, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. Las costas que concederá el tribunal son los gastos necesarios y razonables que tuvo que incurrir la parte prevaleciente del pleito en su tramitación. *Rosario Domínguez et als. v. ELA et al.*, 198 DPR 197, 211 (2017). La Regla 44.1 (b) dispone que la parte que reclame el pago de costas presentará al tribunal y notificará a la parte contraria, dentro del término de diez (10) días a partir del archivo en autos de copia de la notificación de la sentencia, un memorándum, rendido bajo juramento o certificación del abogado, de todas las partidas de gastos y desembolsos necesarios en que se incurrió durante la tramitación del pleito.

Como es sabido los honorarios de abogados no forman parte de las costas anteriormente mencionadas. De ordinario cada parte se encarga de satisfacer los honorarios de su respectiva representación legal, sin embargo, la Regla 44.1 (d) de Procedimiento Civil, dispone que:

[e]n caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.

De conformidad con lo anterior, es norma reiterada que la imposición de honorarios de abogado a la parte contraria solo procede cuando una parte actúa con temeridad. Los honorarios de abogado constituyen una sanción contra quien con su temeridad provocó un pleito que pudo evitarse, lo prolongó innecesariamente o promovió que otra parte incurriera en gestiones evitables. *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999). Se entiende que una parte ha sido temeraria cuando obliga a la otra a incurrir en gastos innecesarios al interponer pleitos frívolos o alargar innecesariamente aquellos ya presentados ante la consideración de los tribunales, o que provoque que incurra en gestiones evitables. *Domínguez v. GA Life*, 157 DPR 690, 706 (2002).

Una vez el tribunal sentenciador concluye que una parte ha sido temeraria, es imperativa la imposición de honorarios de abogado. La determinación de si una parte ha actuado o no con temeridad descansa en la discreción del tribunal. Por lo cual, los tribunales revisores solo intervendrán con tal determinación cuando surja de tal actuación un claro abuso de discreción. *Puerto Rico Oil Company, Inc. V. Dayco Products, Inc.*, 164 DPR 486, 511 (2005).

**III.**

En síntesis, en los primeros dos (2) señalamientos de error, la parte apelante plantea que incidió el foro sentenciador al concluir: que el término para ejercer la opción de compra se prorrogó tácitamente, y que la apelada ejerció el referido derecho por medio de la carta del 11 de agosto de 2015. No le asiste la razón. Veamos.

De entrada, señalamos que las partes de epígrafe coinciden en que no existe controversia sustancial sobre los hechos materiales del

caso. Tan es así, que ambas partes solicitaron que se dictara sentencia sumaria a su favor. Asimismo, al revisar la totalidad del expediente ante nos, concluimos que los hechos esenciales del caso no están en controversia. En vista de ello, nos resta revisar si el foro sentenciador realizó una correcta aplicación del derecho.

En el presente caso, la apelada tenía un plazo inicial de dos (2) años para ejercer el derecho de opción de compra que se le había concedido. Además, el referido plazo se podía prorrogar por dos (2) años adicionales. Dicha prorroga no tenía alguna otra formalidad para su perfeccionamiento más allá de la voluntad de las partes de extender el aludido término. Así lo expresó la señora Bernardi en su deposición:

> P. Y esos dos años se prorrogarían a dos años adicionales. Búsquelo, por favor.
> R. Es correcto.
> P. Y esos dos años adicionales no establecieron que fuera por escrito. Que si se extendían esos dos años eso no tenía que ser por escrito. ¿verdad que no, que no había esa condición?
> R. No se dice que debe ser por escrito.
> P. No. Basta la voluntariedad de las partes, ¿correcto?
> R. Correcto.
> Véase, Transcripción de deposición de la Sra.    Yessica Ivette Bernardi Maldonado, pág. 18.

Como fue expuesto, el término de los dos (2) años sin prorrogar vencía el 1 de enero de 2014. Sin embargo, la parte apelante y la apelada prorrogaron el contrato de una forma tácita. Ello, toda vez que, de sus actos surge la intención inequívoca de extender la vigencia de las estipulaciones pactadas. De igual modo, de las propias declaraciones de la señora Bernardi se desprende la voluntad de prorrogar dicho acuerdo. Sus declaraciones al respecto leen como sigue:

> P. No fue. Mire, porque usted consintió que para el 2013 doña Brenda continuara viviendo en la propiedad, ¿correcto?
> R. Correcto.
> P. Bajo los mismos términos y condiciones de ese contrato que usted tiene en las manos, ¿correcto?
> R. Correcto.
> […]
> P. Para el 2014 usted no va donde doña Brenda a decirle "Brenda necesito la casa. Salte de la casa. "¿verdad que no?

R. No.
Véase, Transcripción de deposición de la Sra. Yessica Ivette Bernardi Maldonado, pág. 20-21.

Así pues, es meritorio resaltar que ambas partes continuaron en cumplimiento de los términos pactados. La parte apelante no apercibió a la apelada de una intención distinta a la de prorrogar el contrato en cuestión. Por su parte, la apelada continuó pagando los gravámenes hipotecarios de la propiedad. Dichos pagos, según lo acordado, serían acreditados al precio de la compraventa convenido. Como fue esbozado, el consentimiento tácito es válido en nuestra jurisdicción. Su importancia se enmarca en la conducta de las partes contratantes y no en la expresión de sus palabras. Ante ello, las actuaciones de las partes de no resolver el contrato y continuar en el cumplimiento de lo pactado, revelan de manera inequívoca su voluntad de consentir.

Al efectuarse la aludida prorroga, la apelada tenía desde el 1 de enero de 2014 hasta el 1 de enero de 2016 para ejercer su derecho de opción de compra. Siendo así, el 11 de agosto de 2015, la apelada efectivamente ejerció dicho derecho, por medio de una carta enviada a la parte apelante. Surge de la prueba documental, que la parte apelante recibió dicha comunicación escrita y no le contestó a la apelada.[5]

Es sabido, que un contrato tiene fuerza de ley entre entre las partes. Según fue expuesto, en los contratos de opción se compra, la parte optante (en este caso la apelada), tiene la facultad exclusiva de decidir si finalmente se celebra un contrato de compraventa. En el caso que nos ocupa, la apelada ejerció el derecho que le fue conferido dentro del término prorrogado. Por tanto, la parte apelante, como promitente, tenía la obligación de cumplir con lo pactado y comparecer al otorgamiento de la escritura de compraventa.

En lo que respecta a los otros dos (2) señalamientos de error, la parte apelante argumenta, que incidió el tribunal de instancia tanto al desestimar la reconvención que había presentado como al imponerle el

---

[5] Véase, Transcripción de deposición de la Sra. Yessica Ivette Bernardi Maldonado, pág. 81.

pago de costas, gastos y honorarios de abogado. Tampoco le asiste la razón.

En el presente caso, las alegaciones de la reconvención versan sobre los mismos planteamientos que resolvió el foro sentenciador en el dictamen recurrido. Por tanto, no proceden los petitorios de la parte apelante sobre el desalojo de la apelada de la propiedad en cuestión, ni la imposición a ésta de los gastos de litigio y de un remedio en daños. Ello, dado que, contrario a lo aducido por la parte apelante, el foro sentenciador correctamente determinó que el derecho de opción de compra no caducó por ser debidamente ejercido por la apelada.

De otra parte, acentuamos que el foro sentenciador tampoco incidió al imponerle a la parte apelante el pago de costas, gastos y honorarios de abogado. Según surge de la previa exposición doctrinal, las costas se conceden a favor de la parte que prevalezca en el pleito. En este caso, la apelada es la parte que prevaleció en litigio. Consecuentemente, tiene en su favor la referida disposición reglamentaria. En lo que se refiere a los honorarios de abogado, nuestro ordenamiento procesal civil establece que el tribunal deberá imponerlos a la parte que actúe con temeridad o frivolidad. De esta manera, el foro sentenciador tenía la discreción de determinar la procedencia de dicha temeridad e imponer los aludidos honorarios.

A su vez, la imposición de costas y honorarios de abogado formaba parte de los términos y condiciones pactados en el "*Contrato de Opción de Compraventa.*" En específico, las partes de epígrafe acordaron lo siguiente: "La parte que incumpla con los términos y condiciones vendrá obligado a pagar las costas y honorarios de abogado que requiera la otra parte para lograr el cumplimiento específico del presente contrato de opción." En el caso ante nos, la apelada tuvo que necesariamente instar una causa de acción para lograr que la parte apelante cumpliera con las estipulaciones del referido contrato. Por consiguiente, según lo acordado, la parte apelante está obligada a pagar las costas y honorarios

de abogado que haya incurrido la apelada en la tramitación del presente pleito.

**IV.**

Por los fundamentos expuestos, concluimos confirmar la determinación recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
