Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| CONSEJO DE TITULARES DEL CONDOMINIO OCEAN PARK, representado por el presidente de su Junta de Directores<br><br>Peticionario<br><br>V.<br><br>TRIPLE-S PROPIEDAD, INC.<br><br>Recurrido | KLCE202400356 | Recurso de *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>SJ2019CV09046<br><br>Sobre:<br>Incumplimiento Contractual; Daños Contractuales; Incumplimiento Aseguradores; Reclamación Irma/María |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Marrero Guerrero, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 29 de abril de 2024.

Comparece mediante el recurso de certiorari el Consejo de Titulares del Condominio Ocean Park, representado por el presidente de su Junta de Directores (en adelante, el Condominio o parte peticionaria). Dicha parte solicita que revoquemos una *Resolución* emitida el 11 de enero de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), en la que el foro primario declaró no ha lugar una Solicitud de Sentencia Sumaria Parcial presentada por la parte peticionaria en contra de Triple-S Propiedad, Inc. (en adelante, Triple-S o parte recurrida).[1]

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* y *revocamos* la determinación recurrida.

---

[1] Apéndice de la *Petición de Certiorari*, págs. 83-91. Archivada y notificada en autos el 11 de enero de 2024.

**-I-**

Como trasfondo al asunto que nos ocupa, es necesario destacar que, para el período comprendido entre el 1 de mayo de 2017 hasta el 1 de mayo de 2018, Triple-S expidió a favor del Condominio una póliza de propiedad comercial con número 30-CP-81091392-0.[2] Posteriormente, el 20 de marzo de 2018, el Condominio presentó una reclamación ante Triple-S por daños sufridos en la propiedad debido al paso del huracán María en Puerto Rico. La reclamación fue identificada con el número 1350074.[3]

El 4 de septiembre de 2019, el Condominio presentó una demanda por incumplimiento de contrato y daños y perjuicios contra Triple-S.[4] En síntesis, sostuvo que: (1) durante el paso del huracán María, las propiedades del Condominio estaban cubiertas bajo una póliza emitida por Triple-S; (2) los daños sufridos por el Condominio como consecuencia del desastre natural se estimaron en $1,220.665.97; (3) inicialmente, Triple-S ofreció una compensación irrisoria de $25,795.91, que luego incrementó a $49,608.12; (4) el 11 de marzo de 2019, Triple-S aumentó la oferta a $52,651.62, con la intención de cubrir todos los daños de los edificios incluidos en la póliza de protección de la propiedad; (5) hasta la fecha de la presentación de la demanda y sin motivo alguno, Triple-S no había indemnizado al Condominio por los daños reclamados; y (6) Triple-S incurrió en prácticas desleales, mala fe y dolo.

En consecuencia, la parte peticionaria solicitó al tribunal que dictara sentencia a su favor por la totalidad de los daños del Condominio cubiertos por la póliza de seguro. Además, solicitó que se condenara a Triple-S pagar las costas del caso, así como intereses

---

[2] *Íd.,* pág. 57.
[3] *Íd.,* pág. 63.
[4] *Íd.,* págs. 1-8.

pre-sentencia, una cuantía por dolo y una suma razonable de honorarios legales, debido a la obstinación y temeridad de Triple-S al negarse injustificadamente a ajustar y pagar prontamente la reclamación. Ello, según lo dispone la Regla 44.1 de Procedimiento Civil.

Por su parte, el 2 de diciembre de 2019, Triple-S presentó su *Contestación a la demanda*.[5] En la misma, negó las alegaciones en su contra y señaló, entre otras cosas, que: (1) en este caso, Triple-S ha operado como una aseguradora prudente y razonable, de conformidad con el Código de Seguros, el Reglamento del Código de Seguros y las directrices del Comisionado de Seguros; (2) Triple-S ha cumplido con los términos y condiciones de la póliza emitida a favor del Condominio; (3) la propiedad sufrió ciertos daños como resultado del huracán María, los cuales fueron investigados y considerados por Triple-S como parte de su proceso de ajuste y oferta de pago al Condominio, en la medida en que estuvieron cubiertos bajo los términos de la póliza; (4) el ajuste y la oferta de pago son justos y razonables, ya que reflejan la realidad de los daños causados por el huracán María; (5) la parte peticionaria no proporcionó toda la información requerida durante el proceso de ajuste y rechazó las ofertas de pago de Triple-S; (6) el Condominio reclama daños que no están cubiertos o están limitados por los términos de la póliza; y (7) el Condominio exageró tanto sus daños como los precios de las reparaciones de dichos daños.

En su respuesta a la demanda, Triple-S también presentó varias defensas afirmativas, entre las cuales incluyó la defensa de fraude. En específico, planteó que presentaba esta defensa para preservarla y evitar que se interpretara como renunciada. Afirmó que, una vez concluya el descubrimiento de prueba, de ser

---

[5] *Íd.,* págs. 9-24.

precedente, expondrá los hechos que fundamentan esta defensa o enmendará sus alegaciones, según corresponda.

Tras varios trámites procesales, el 10 de noviembre de 2023, el Condominio presentó una *Solicitud de Sentencia Sumaria Parcial*.[6] En esencia, argumentó que, durante el litigio, Triple-S elaboró un ajuste revisado en el cual reconoció que le debe al Condominio al menos $139,429.51 por daños cubiertos bajo la póliza número 30-CP-81091392-0, ocasionados por el huracán María. Adujo que esta cantidad constituye un reconocimiento de una deuda líquida y exigible, pero que, a pesar de ello, Triple-S ha rehusado pagarla de inmediato sin contar con una justificación legal válida. En consecuencia, solicitó al TPI que ordenara el pago anticipado del ajuste determinado por Triple-S a favor del Condominio, por un monto de $139,429.51, además de los intereses por mora, intereses legales y honorarios de abogado correspondientes, sin que esto se interpretara como un pago final de la totalidad de la reclamación ni implicara una renuncia a otros derechos protegidos por la póliza, el Código de Seguros y su Reglamento.

El 28 de diciembre de 2023, Triple-S presentó una *Oposición a Sentencia Sumaria Parcial*.[7] En esta, alegó que la petición del Condominio no es procedente, ya que los hechos presentados en la moción no se basaron en los documentos incluidos en ella, sino que estaban controvertidos. Además, señaló que el Condominio incluyó como hechos incontrovertidos conclusiones de derecho erróneas que no deberían ser considerados por el tribunal. También negó la afirmación de que el ajuste elaborado por Triple-S sobre la cantidad de $139,429.51 constituye una suma líquida y exigible. Concluyó que, dado a que no existe una cantidad líquida y exigible, no procede imponerle a Triple-S ninguna cantidad por mora o temeridad.

---

[6] *Íd.,* págs. 27-40.
[7] *Íd.,* págs. 61-81.

Por último, Triple-S destacó que en su respuesta a la demanda presentó una defensa afirmativa de fraude, la cual no ha sido renunciada y que será sustentada una vez concluya el descubrimiento de prueba. Argumentó que, debido a que existe una defensa de fraude que podría invalidar la póliza de seguro objeto del litigio, no procede que se ordene a Triple-S el pago solicitado por el Condominio en su solicitud de sentencia sumaria parcial.

El 11 de enero de 2024, el foro primario emitió una *Resolución* en la que declaró no ha lugar la solicitud de sentencia sumaria parcial presentada por el Condominio.[8] En efecto, determinó que la parte peticionaria no presentó ningún documento que acreditara la notificación de una oferta de ajuste por parte de la aseguradora. Resaltó que el anejo relacionado con el presunto ajuste preparado por Triple-S se trata de una tabla desglosada que ni tan siquiera estaba firmada por un oficial de la aseguradora. Por lo tanto, consideró que no había una notificación formal de la oferta de ajuste. Además, subrayó que existía controversia sobre una o más partidas de la reclamación.

El 25 de enero de 2024, el Condominio presentó una *Moción de Reconsideración Re: Resolución de 11 de enero de 2024.*[9] Por su parte, el 26 de febrero de 2024, Triple-S presentó una *Oposición [a] Reconsideración.*[10] Finalmente, el 28 de febrero de 2024, el Tribunal emitió una *Orden* en la que declaró no ha lugar la solicitud de reconsideración.[11]

Inconforme, el 27 de marzo de 2024, en su recurso ante nos el Condominio imputa al TPI la comisión de los siguientes errores:

1. Erró el TPI al no ordenar el pago de las partidas que la aseguradora entendió procedentes en el ajuste de la reclamación, que corresponden a una deuda líquida y exigible.

---

[8] *Íd.,* págs. 83-91.
[9] *Íd.,* págs. 92-100.
[10] *Íd.,* págs. 103-110.
[11] *Íd.,* págs. 111-112.

2. Erró el TPI al no conceder intereses por mora a favor del Condominio Ocean Park al amparo del Artículo 1061 del Código Civil aplicable a la causa de acción del epígrafe.

3. Erró el TPI al no conceder intereses a favor del Condominio Ocean Park al amparo de la Regla 44.3(b) de las Reglas de Procedimiento Civil.

4. Erró el TPI al no conceder honorarios de abogados a favor del Condominio Ocean Park al amparo del Artículo 27.165 del Código de Seguros.

Para sustentar su posición, el Condominio reiteró que, de los hechos medulares sobre los cuales no existe controversia en este caso, surge que Triple-S preparó un ajuste de la reclamación con fecha del 24 de marzo de 2022 donde reconoce en el apartado titulado "Net Cost to Pay" la cantidad de $139,429.51. Por consiguiente, Triple-S no puede negarse a pagar las partidas que entendió procedentes en su ajuste. Además, la parte recurrida presentó alegaciones genéricas y escuetas sobre fraude con las que ha dilatado injustificadamente el cumplimiento de sus obligaciones.

En respuesta, el 16 de abril de 2024, Triple-S presentó su *Alegato en Oposición a Certiorari*. En resumen, enfatizó que la expedición del certiorari no es procedente debido a que: (1) la deuda reclamada no es líquida ni exigible; (2) el ajuste judicial no representa una oferta de pago por parte de Triple-S; y (3) el descubrimiento de prueba en el caso aún no ha finalizado.

Con el beneficio de la comparecencia de las partes, procedemos a discutir las normas jurídicas aplicables a este recurso.

**-II-**

**-A-**

El *certiorari* es un recurso extraordinario cuya característica se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *McNeil McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403-404, (2021); *800 Ponce de*

*León v. AIG*, 205 DPR 163, 174 (2020), *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Este Tribunal tiene la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del TPI. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Cabe precisar que el *certiorari* es el recurso de revisión disponible para revisar órdenes de protección.

Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, prescribe los criterios que debemos tomar en consideración al momento de determinar si expedimos o denegamos el auto solicitado:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

De no estar presente algunos de estos criterios, corresponde abstenernos de expedir el auto de *certiorari*.

**-B-**

La sentencia sumaria es un mecanismo procesal cuyo objetivo principal es simplificar la solución justa, rápida y económica de casos civiles que no presentan controversias genuinas o reales sobre hechos materiales y esenciales. Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36; *Birriel Colón v. Supermercado Los Colobos*, 2023 TSPR 120, 4 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208

DPR 310, 334 (2021); *Zambrana García v. ELA et al.*, 204 DPR 328, 341 (2020). Se considera un hecho material esencial aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *S.L.G. Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133, 167 (2011). En ese sentido:

> *La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.*
>
> Regla 36.3 (e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (e)

En otras palabras, este mecanismo podrá ser empleado en situaciones en las que la celebración de una vista o del juicio en su fondo resultare innecesaria, debido a que el tribunal tiene ante su consideración todos los hechos necesarios y pertinentes para resolver la controversia y solo resta aplicar el derecho. *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 16-17 (2015); *Mejías v. Carrasquillo*, 185 DPR 288, 299 (2012). En sentido contrario, un asunto no debe ser resuelto sumariamente cuando:

> *(1) existen hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho no procede. S.L.G. Szendrey-Ramos v. Consejo de Titulares,* supra, pág. 167.

El inciso (a) de la Regla 36.3 de Procedimiento Civil establece que la moción de la parte promovente deberá contener:

> *(1) Una exposición breve de las alegaciones de las partes;*
> *(2) los asuntos litigiosos o en controversia;*
> *(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;*
> *(4) una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;*
> *(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y*
> *(6) el remedio que debe ser concedido.*

Regla 36.3(a) de las de Procedimiento Civil, 32 LPRA Ap. V,
R. 36.3(a).

De manera similar, la Regla 36.4 de Procedimiento Civil establece que, si no se emite una sentencia sobre la totalidad del pleito, no se otorga todo el remedio solicitado, o se deniega la petición, y es necesario celebrar un juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, así como los hechos esenciales y pertinentes que están realmente controvertidos.

Asimismo, presentada una moción de sentencia sumaria, la parte promovida no deberá cruzarse de brazos ni descansar exclusivamente en meras afirmaciones o en las aseveraciones contenidas en sus alegaciones. *Rodríguez Méndez v. Laser Eye*, 195 DPR 769, 785 (2016). Es preciso que la parte promovida formule, con prueba adecuada en derecho, una posición sustentada con contradeclaraciones juradas y contradocumentos que refuten los hechos presentados por el promovente. *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, págs. 336-337 (2021); *Ramos Pérez v. Univisión*, 178 DPR 200, 215 (2010). Por consiguiente, cualquier duda que plantee sobre la existencia de hechos materiales en controversia no será suficiente para derrotar la procedencia de la solicitud. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 26 (2014). Después de todo, la etapa procesal para presentar prueba que controvierta los hechos propuestos por una parte en su moción de sentencia sumaria no es en el juicio, sino al momento de presentar una oposición a la moción de sentencia sumaria, según lo exige la Regla 36 de Procedimiento Civil. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 122 (2015).

Con ese fin, la parte promovida también está obligada a cumplir con las exigencias enunciadas en las cláusulas (1), (2) y (3)

del inciso (a) de la Regla 36.3 (b)(1) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (b)(1). Le corresponde citar con especificidad cada uno de los párrafos, según enumerados en la solicitud de sentencia sumaria, que entiende se encuentran en controversia, al igual aquellos que no. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013). Dicha tarea deberá ser realizada de forma tan detallada y específica como lo haya hecho la parte promovente y haciendo referencia a la evidencia admisible en la cual se sostiene la impugnación, con cita a la página o sección pertinente. *Íd.*

Así pues, al evaluar si existe controversia de hechos que impidan dictar sentencia sumaria, los Tribunales deben: (1) analizar los documentos que acompañan la solicitud, los incluidos en la oposición y aquellos que obran en el expediente; y (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *S.L.G. v. S.L.G.*, 150 DPR 171, 194 (2000).

Finalmente, destacamos que, según establecido por nuestro Tribunal Supremo, **este primer foro apelativo se sitúa en la misma posición que los foros de instancia al revisar las solicitudes de que determinada sentencia sea dictada sumariamente**. *Rivera Matos v. Estado Libre Asociado de Puerto Rico*, 204 DPR 1010, 1025 (2020); *Meléndez González et al. v. M. Cuebas,* supra. **Por lo tanto, nuestra revisión es una *de novo.***

**-C-**

Reiteradamente nuestro Tribunal Supremo ha establecido que la materia de seguros está investida de alto interés público debido a que desempeña un rol trascendental en la protección de riesgos que amenazan la vida o el patrimonio de la ciudadanía. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 988-989 (2023); *RJ Reynolds v. Vega Otero*, 197 DPR 699, 706-707 (2017); *Natal Cruz v. Santiago*

*Negrón et al.*, 188 DPR 564, 575-576 (2013). Debido a esta circunstancia, la industria de seguros está extensamente regulada por el Código de Seguros de Puerto Rico, 26 LPRA sec. 101 *et seq.*, y supletoriamente por el Código Civil de Puerto Rico, 31 LPRA sec. 5311 *et seq.*

En cuando al Código de Seguros, este cuerpo legal reglamenta expresamente las "prácticas comerciales en el negocio de seguros". 27 LPRA sec. 2701-2736; *Carpets & Rugs v. Tropical Reps*, 175 DPR 615, 632 (2009)*; Assoc. Ins. Agencies, Inc. v. Com. Seg. PR*, 144 DPR 425, 442 (1997). Una de las áreas más reguladas por este código es la relacionada con "las prácticas desleales y fraudes en el negocio de los seguros", lo cual incluye lo relativo al "ajuste de reclamaciones". *Carpets & Rugs v. Tropical Reps*, supra, pág. 632; *Comisionado de Seguros v. PRIA*, 168 DPR 659 (2006); Artículos 27.010-27.270 del Código de Seguros de Puerto Rico, 26 LPRA secs. 2701-2740. De hecho, respecto al manejo de reclamaciones, el Código de Seguros prohíbe varios "actos o prácticas desleales". 26 LPRA sec. 2716a.

De acuerdo con lo mencionado anteriormente, una aseguradora está obligada por ley a "notificar una oferta razonable". *Carpets & Rugs v. Tropical Reps*, pág. 634. La investigación previa a esta oferta debe ser "diligente", y el ajuste tiene que ser "equitativo y razonable". Íd. Salvo se realice un pago total de lo reclamado o se deniegue totalmente la reclamación de forma escrita y fundamentada, la misma no puede ser considerada resuelta sin que medie una "oferta razonable". Íd. En otras palabras, las aseguradoras tienen la "obligación de llevar a cabo un ajuste rápido, justo, equitativo y de buena fe". Íd., pág. 635.

En ese sentido, se considera que una oferta final de una aseguradora no es equivalente a una oferta de transacción, o a una postura de negociación, de las que pueden generarse en otros contextos que no están sujetos a la intensa y específica reglamentación del campo de los seguros. *Íd.* Entiéndase, **una aseguradora no puede**

**"retractarse" de un ajuste**, a diferencia de lo que sucedería si se considerase dicho ajuste como una oferta típica dirigida a transigir o finalizar una disputa en un campo distinto al de seguros. *Íd.* Por ello, distinto a lo que ocurre en otros ámbitos del comercio, **"ante un reclamo judicial", una aseguradora no puede "den[egar] partidas que en su ajuste inicial entendió procedentes"**. *Íd.,* pág. 636 (énfasis nuestro).

Cabe destacar que, en *Carpets & Rugs v. Tropical Reps*, supra, se resolvió que una comunicación de una aseguradora, como oferta o ajuste final de una reclamación, era admisible en evidencia, pues no se trata de una postura de "negociación conducente [a un posible] contrato de transacción". Íd, pág. 638. Se concluyó que la carta de ajuste en el referido caso no se emitió "voluntariamente en un proceso de negociación conducente al contrato de transacción, sino como parte de [la] obligación [de la aseguradora] al amparo del Código de Seguros de Puerto Rico de resolver de forma final una reclamación de un asegurado...". Íd., pág. 639.

De forma similar, en *Feliciano Aguayo v. Mapfre Panamerican Insurance Company*, 207 DPR 138 (2021), el Tribunal Supremo señaló que, cuando la aseguradora envía una oferta razonable al asegurado, la misma constituye un estimado de los daños. Por ello, dicha **oferta razonable se considera "un reconocimiento de deuda al menos en cuanto a las sumas ofrecidas como ajuste"**. Íd., pág. 165 (énfasis nuestro). Por tanto, se indicó lo siguiente:

> Nótese que "en dicho documento **no existen concesiones del asegurador hacia su asegurado**, pues se trata de un informe objetivo del asegurador en cuanto a la procedencia de la **reclamación y la existencia de cubierta según la póliza."** Por ende, al emitir el informe de ajuste no hay una controversia bona fide entre asegurador y asegurado**.

> Íd. (énfasis en el original):

**-D-**

El cobro de intereses por mora está previsto en al artículo 1061 del Código Civil de Puerto Rico, 31 LPRA sec. 3025 (derogado, 2020), donde se establece lo siguiente:

> Si la obligación consistiere en el pago de una cantidad de dinero y el deudor incurriere en mora, la indemnización de daños y perjuicios, no habiendo pacto en contrario, consistirá en el pago de los intereses convenidos, y a falta de convenio, en el interés legal.
>
> Se considerará como legal el interés que fije la Oficina del Comisionado de Instituciones Financieras; disponiéndose que los intereses se computarán de forma simple y no compuesta.[12]

Los intereses por mora son considerados como una indemnización independiente de daños y perjuicios, impuesta como penalidad por la demora en el pago o por el incumplimiento de una parte. Para que exista mora por parte del deudor es necesario que, 1) se trate de una obligación positiva de dar o hacer; 2) que la obligación sea exigible, líquida y esté vencida; 3) que el deudor retarde culpablemente el cumplimiento de su obligación, y; 4) que el acreedor requiera el pago al deudor, ya sea judicial o extrajudicialmente. J. Castán Tobeñas, *Derecho Civil Español, Común y Foral*, 16ta ed., Madrid, Ed. Reus S.A., 1992, Tomo III, 238-240.

El requisito de la interpelación del acreedor para que opere la mora en contra del deudor está recogido en el artículo 1053 del Código Civil, 31 LPRA sec. 3017 (derogado 2020), al disponer que la mora comienza para el obligado a entregar o hacer alguna cosa desde que el acreedor le exija judicial o extrajudicialmente el cumplimiento de su obligación. Por excepción, no será necesaria la intimación del acreedor cuando la obligación o la ley así lo declaren, o cuando de la naturaleza y circunstancias de la obligación resulte que la

---

[12] Haremos referencia a las disposiciones del derogado Código Civil toda vez que era de aplicación al momento de la vigencia de la reclamación de la parte peticionaria.

designación de la época en que debía entregarse la cosa o hacerse el servicio, fue un motivo determinante para establecer la obligación.

**-E-**

La concesión de intereses por mora es de naturaleza diferente a los intereses por temeridad contemplados en la Regla 44.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.3(b). Esta regla específicamente aborda la concesión de intereses legales en casos de temeridad. Su contenido establece lo siguiente:

> (b) El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo que haya fijado la Junta en virtud del inciso (a) de esta regla y que esté en vigor al momento de dictarse la sentencia desde que haya surgido la causa de acción en todo caso de cobro de dinero y desde la presentación de la demanda, en caso de daños y perjuicios, y hasta la fecha en que se dicte sentencia a computarse sobre la cuantía de la sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, dependencias o funcionarios o funcionarias en su carácter oficial. El tipo de interés se hará constar en la sentencia.

En este contexto, la concesión de intereses legales por temeridad está contemplada en nuestro ordenamiento jurídico como una sanción dirigida al que con su conducta ha obligado a la parte adversa en un litigio a incurrir en gastos. *SLG Flores-Jiménez v. Colberg,* 173 DPR 843, 866 (2008). Ahora bien, la determinación de si una parte obró con temeridad descansa en la sana discreción del juzgador de los hechos. *Torres Vélez v. Soto Hernández,* 189 DPR 972, 993-994 (2013); *C.O.P.R. v. S.P.U.,* 181 DPR 299, 342 (2011).

**-F-**

Tras la devastación causada por los huracanes Irma y María en Puerto Rico, y en respuesta a la mala fe de las aseguradoras y con el objetivo de garantizar un mayor acceso a la justicia para los asegurados, la Asamblea Legislativa promulgó la Ley Núm. 247-2018. Esta ley introdujo diversos articulados al Código de Seguros de Puerto Rico, incluyendo el pertinente a esta controversia, el cual dispone:

Artículo 27.165. — Costas y Honorarios de Abogado

(1) Al recaer una sentencia o decreto por cualquiera de los tribunales contra un asegurador y en favor de cualquier asegurado nombrado o el beneficiario designado bajo una póliza o contrato ejecutado por el asegurador, el Tribunal de Primera Instancia o, en el caso de una apelación en la que prevalezca el asegurado o beneficiario, el tribunal de apelación, deberá adjudicar o decretar contra el asegurador y a favor del asegurado o el abogado del beneficiario una suma razonable como honorarios o compensación por haber procesado la demanda en la que se obtuvo una recuperación.

[…].

(3) Cuando se otorgue, la compensación u honorarios del abogado se incluirán en la sentencia o decreto dictado en el caso.

Es menester destacar que, nuestro más Alto Foro expresó que, Ley Núm. 247-2018 aplica retroactivamente a las reclamaciones relacionadas a los huracanes Irma y María. *Consejo de Titulares del Cond. Balcones de San Juan v. Mapfre PRAICO Ins. Co.*, 208 DPR 761, 772 (2022).

A la luz de las normas jurídicas antes expuestas, procedemos a resolver.

**-III-**

Después de una revisión minuciosa del expediente del caso y en el ejercicio de nuestra discreción, entendemos que en el presente asunto resulta meritoria la expedición del auto de *certiorari*.

En esencia, nos corresponde determinar si el foro primario incidió al denegar la *Solicitud de Sentencia Sumaria Parcial* presentada por el Condominio. En específico, el foro primario determinó que no se realizó una notificación formal de la oferta de ajuste por parte de Triple-S, ya que el documento presentado como el ajuste correspondiente de la aseguradora se trataba de una tabla desglosada que carecía de la firma de un oficial de la compañía. A su vez, consideró que existe controversia de hechos sobre una o más partidas de la reclamación.[13]

---

[13] *Íd.,* págs. 83-91.

Es fundamental destacar que, según lo dispuesto por el Tribunal Supremo, al analizar una solicitud de sentencia sumaria, los tribunales de instancia deben: (1) examinar estrictamente la petición y los documentos que la acompañan, junto a la moción en oposición y todos los documentos que obran en el expediente del recurso, y (2) determinar si quien se opone a la solicitud de sentencia sumaria controvirtió algún hecho material o hay alegaciones de la demanda que no fueron refutadas en la solicitud de sentencia sumaria. *SLG Zapata-Rivera v. JF Montalvo,* supra. Además, es norma reiterada en nuestro ordenamiento jurídico que el Tribunal de Apelaciones se sitúa en la misma posición que el Tribunal de Primera Instancia al revisar una solicitud de sentencia sumaria. *Rivera Matos v. Estado Libre Asociado de Puerto Rico*, supra, pág. 1025; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118.

En vista de lo anterior, hemos evaluado *de novo* la *Solicitud de Sentencia Sumaria Parcial* presentada por el Condominio, así como la documentación en apoyo a la misma y los escritos posteriores de ambas partes, y determinamos que TPI incidió en su dictamen.

En el primer señalamiento de error, la parte peticionaria señala que el foro primario erró al no ordenar el pago de las partidas que la propia aseguradora entendió procedentes en el ajuste de la reclamación, las cuales constituyen una deuda líquida y exigible.

Según se desprende del expediente, Triple-S proporcionó al Condominio una tabla en la que detalló la información de la póliza emitida a favor del Condominio, así como la información de inspección y ajuste.[14] En este documento, **especificó en el apartado titulado "Net Cost to Pay" la cantidad de $139,429.51**. En cuanto a esto, conviene destacar que, en la *Oposición a Sentencia Sumaria Parcial* Triple-S indicó lo siguiente sobre el ajuste en

---

[14] *Íd.,* págs. 57-58.

cuestión: "**[s]e admite que, basado en la evidencia y prueba recopilada hasta entonces, TSP emitió un ajuste judicial por la cantidad de $139,429.51**".[15] Además, el TPI en su *Resolución* incluyó como determinación de hecho número nueve (9) que "**[e]l 24 de marzo de 2022 Triple S emitió una tabla con un ajuste de la reclamación por la cantidad de $139,429.51**" (énfasis nuestro).[16]

De acuerdo con lo anterior, concluimos distinto al TPI: Triple-S realizó una oferta formal de ajuste. Por lo cual, la aseguradora no puede retractarse de este ajuste, ya que fue realizado y comunicado como parte de su obligación de resolver la reclamación de la parte peticionaria al amparo del Código de Seguros. *Carpets & Rugs v. Tropical Reps*, supra. Además, esto no constituye una oferta que puede ser retirada si la otra parte no la acepta, como sucede en otros contextos donde se intenta negociar un posible contrato de transacción. Íd.

En este caso, debido a la normativa aplicable a las aseguradoras, tal como se estableció en los casos *Carpets & Rugs v. Tropical Reps*, supra, y *Feliciano Aguayo v. Mapfre Panamerican Insurance Company*, supra, el ajuste representa un informe objetivo derivado de la obligación de Triple-S de investigar diligentemente la reclamación y llevar a cabo un ajuste razonable. De ahí surge la obligación de la aseguradora de respetar su propio ajuste y proceder a desembolsar inmediatamente dicha cantidad al Condominio.

Asimismo, **el ajuste comunicado en este caso constituye un reconocimiento de una deuda**. *Carpets & Rugs v. Tropical Reps,* supra*; Feliciano Aguayo v. Mapfre Panamerican Insurance Company*, supra. En efecto, la aseguradora, después de llevar a cabo la correspondiente investigación, y de conformidad con sus obligaciones estatutarias, reconoció que, como mínimo, tenía la

---

[15] *Íd.,* pág. 64.
[16] *Íd.,* pág. 84.

obligación, bajo los términos de la póliza, de satisfacerle al Condominio las cantidades reflejadas en el ajuste. De forma específica, Triple-S emitió un informe objetivo donde determinó que la reclamación procedía y reconoció su obligación de pagar una cuantía específica conforme a la póliza número 30-CP-81091392-0. Esto extinguió cualquier posible controversia entre las partes en cuanto a dicha cuantía.

Por la misma línea, la Regla 47(7)(d) del Reglamento del Código de Seguros establece que cuando "no exista controversia sobre uno o varios aspectos de la reclamación, se deberá hacer el pago correspondiente, independientemente de que exista una controversia en cuanto a otros aspectos de la reclamación, siempre que el mismo se pueda efectuar sin perjuicio de ambas partes."

Por otra parte, no tiene méritos la argumentación de Triple-S en cuanto a la posibilidad de "fraude". En primer lugar, según se desprende del ajuste y de las declaraciones de la propia aseguradora, éste fue el resultado de su propio trabajo y análisis, y no simplemente de representaciones del Condominio.[17] En segundo lugar, la aseguradora no menciona ningún hecho específico que pueda plantear dudas sobre su propia evaluación del monto de los daños que procedía pagarse al Condominio según los términos de la póliza. No basta con que la aseguradora formule afirmaciones escuetas y genéricas sobre un supuesto fraude para eludir su obligación de cumplir con lo que reconoció después de realizar su propia investigación. Es importante tener en cuenta que, según la normativa, "las aseveraciones sobre fraude [...] se consideran materiales especiales, las cuales deben exponerse detalladamente en las alegaciones". *Carpets & Rugs v. Tropical Reps*, supra, pág.

---

[17] *Íd.,* págs. 57-58 y 64.

641; Regla 7.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 7.2. Por tanto, el TPI cometió el primer error señalado por el Condominio.

En segundo lugar, el Condominio plantea que el foro primario erró al denegar los intereses por mora a favor de Condominio al amparo del Artículo 1061 del Código Civil de 1930.

Según discutido en la sección II de esta Sentencia, los intereses por mora son una indemnización independiente de daños y perjuicios, impuesta como penalidad por la demora en el pago o por el incumplimiento de una parte. Para que exista mora por parte del deudor es necesario que concurran los siguientes criterios: (1) se trate de una obligación positiva de dar o hacer; (2) la obligación sea exigible, líquida y esté vencida; (3) el deudor retarde culpablemente el cumplimiento de su obligación, y; (4) el acreedor requiera el pago al deudor, ya sea judicial o extrajudicialmente. J. Castán Tobeñas, *Derecho Civil Español, Común y Foral*, 16ta ed., Madrid, Ed. Reus S.A., 1992, Tomo III, 238-240.

En este caso, existe una obligación de indemnizar al Condominio por los daños causados por el huracán María en Puerto Rico, según los términos de la póliza número 30-CP-81091392-0. Actualmente, existe una deuda líquida y exigible de $139,429.51, la cual Triple-S ha demorado en pagar desde que fue reconocida en su ajuste, es decir, desde el 24 de marzo de 2022. Por lo tanto, nos parece el curso más apropiado que el foro de instancia calcule los intereses por mora. Sin embargo, este cálculo deberá realizarse desde la fecha en que Triple-S elaboró el ajuste, el 24 de marzo de 2022, en lugar de la fecha de la presentación de la demanda, el 4 de septiembre de 2019. Esto se debe a que el incumplimiento con el pago reconocido en el ajuste elaborado por Triple-S provocó que la aseguradora incurriera en mora a partir de ese momento. Asimismo, el foro primario considerará la tasa de interés legal establecida por la Oficina del Comisionado de Instituciones Financieras.

En tercer lugar, el Condominio plantea que el foro primario incidió al no conceder intereses por temeridad a favor del Condominio al amparo de la Regla 44.3(b) de las Reglas de Procedimiento Civil.

La Regla 44.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.3(b) establece que, en casos de daños y perjuicios, el tribunal impondrá a la parte que haya actuado con temeridad el pago de interés desde la presentación de la demanda hasta la fecha de la sentencia, calculados sobre la cuantía de la sentencia. Sin embargo, reconocemos que la determinación de temeridad es un asunto discrecional y los tribunales apelativos solo debemos intervenir ante la presencia de abuso de discreción. *Torres Vélez v. Soto Hernández*, supra, págs. 993-994; *C.O.P.R. v. S.P.U.*, supra, pág. 342. Por tanto, consideramos que las actuaciones de Triple-S y sus planteamientos expuestos en sus distintas comparecencias, según obran del expediente, no demuestran la existencia de una conducta temeraria. En atención a ello, concluimos que el TPI no abusó de su discreción, por lo que es improcedente la imposición de intereses por temeridad.

En último lugar, el Condominio sostiene que el foro primario incidió al no conceder honorarios de abogados a favor del Condominio al amparo del Artículo 27.165 del Código de Seguros.

Según discutido en la sección II de esta Sentencia, el Artículo 27.165 del Código de Seguros establece una disposición especial sobre honorarios legales. Este artículo prescribe que al recaer una sentencia o un decreto del Tribunal de Primera Instancia o del Tribunal de Apelaciones en contra de un asegurador y a favor de un asegurado, el tribunal debe otorgar una suma razonable como honorarios legales por haber procesado la demanda en la que se obtuvo una recuperación. Por lo tanto, procede que se ordene el pago de honorarios legales a favor del Condominio. Dicha disposición es clara y aplica en todos los casos que cumplan con estos requisitos.

En el caso ante nuestra consideración, este Tribunal de Apelaciones está emitiendo una sentencia que ordena un pago parcial en contra Triple-S a favor del Condominio. En consecuencia, se ordena el pago de honorarios legales a favor del Condominio.

**IV**

Por los fundamentos que anteceden, se expide el auto y revocamos la determinación recurrida.  Se devuelve el asunto al TPI para la continuación de los procedimientos de manera consistente con lo dispuesto en esta Sentencia.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones